**Elizabeth BEKAERT, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**
Appellee.

No. 15298.

United States Court of Appeals
Eighth Circuit.

Feb. 23, 1956.

128

Robert C. McGowan and James J. Fitzgerald, Omaha, Neb., for appellant.

C. F. Connolly, Omaha, Neb. (Robert G. Fraser and Fraser, Connolly, Crofoot & Wenstrand, Omaha, Neb., with him on the brief), for appellee.

Before WOODROUGH, JOHNSEN and VOGEL, Circuit Judges.

JOHNSEN, Circuit Judge.

An injured party obtained a judgment in negligence against the driver of an automobile, on which execution was returned unsatisfied. She then sought, by garnishment proceedings under Nebraska law, to collect the amount of the judgment from the liability insurer of the owner of the car, on the basis that the automobile was being used at the time of the accident with the named-insured's permission, and that the driver therefore was covered, under the omnibus clause of the policy, as an additional insured.[1]

1. The particular omnibus clause provided that "the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Nebraska has a general statutory prescription that a policy of automobile liability insurance "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured * * *." Nebr.R.R.S.1943, § 60–534.

On a jury-waived trial of the issue thus presented, the court made a finding of fact that the driver's use of the car at the time of the accident had not been with the named-insured's permission. The insurer was accordingly held to be without liability on its policy for the judgment against the driver, and the injured party has appealed.

The controlling question here is whether the evidence required a holding that permission on the part of the named insured to the driver's use of the car at the time of the accident had impliedly existed in the situation as a matter of law, or whether, under Nebraska law, the testimony, circumstances and inferences possible therefrom could properly be viewed as involving such unabsoluteness or equivocalness of intent, understanding and relationship between the parties, in respect to the use of the car at the time of the accident, as entitled the question of the owner's permission to be appraised and resolved by the trial court as one of fact, whether from direct evidence or on persuasive implications.

■ First, it may be noted that Nebraska has never made any such liberal or extreme interpretation and application of its statutory omnibus-clause prescription (set out in footnote 1 hereof) as that any permission, whether general or special, given by a named insured to the use of the automobile by another, will, as a matter of law, extend coverage to the permittee in whatever use he may make of the car, unless his possession thereof shall have become unlawful as against the named insured, in the sense that what he has done with the car has amounted to a conversion by him. See generally 5 Am.Jur., Automobiles, §§ 537, 538, 539, pp. 807–808; 5 A.L.R.2d 624, annotation.

■ On the contrary, such Nebraska cases as there are in the omnibus-clause field, appear to make the question of permission on the part of a named insured to the use of the automobile by another at the time of an accident one that ordinarily is to be resolved, in its express or implied existence, as a matter of actual and found fact. Cf. Wigington v. Ocean Accident & Guarantee Corp., 120 Neb. 162, 231 N.W. 770; Andrews v. Commercial Casualty Ins. Co., 128 Neb. 496, 259 N.W. 653; Witthauer v. Employers Mutual Casualty Co., 149 Neb. 728, 32 N.W.2d 413.

In each of these three cases, as examination will show, the Nebraska Supreme Court primarily engaged in testing the sufficiency of the evidence in the record to sustain the factual appraisal and general finding of permission or lack of permission which the trial court had made. And the seemingly strict view taken by the Court in the latest of them (the Witthauer case), of the facts and circumstances bearing on the question of authorized or unauthorized use, and its overthrowing on that basis of the trial court's finding there of existing permission, can hardly be said, we think, to have required the District Court here, in its attempted appraisal and application of Nebraska law, to recognize any wide margin of general deviation allowance, in its resolution of whether the use of the car at the time of the accident had in fact been one of actual (whether expressly or impliedly established), existing permission.

■ Under the Nebraska decisions, and on the evidence in the record, we can not convictionally say that the trial court's determination in the present situation was clearly erroneous, and we must consequently affirm. Only the most salient of the facts underlying the court's decision, as the court appears to have credited the testimony and its implications, need here be set out in evidential demonstration.

The named insured and the accident-driver were members of the armed forces, stationed at Offutt Air Force Base near Omaha, Nebraska, and living in the same barracks. In their 18-months service contact, they had become friends and companions, spending much of their off-duty time together in common, recreational pursuits. On mutual week-end leaves, they would engage in using the

named-insured's car to get away from the Base, sharing the cost of the gasoline and oil consumed in such adventures.

On three or four occasions during their 18-months acquaintanceship, when the named insured had had to be on duty, but the accident-driver was free, the latter had been allowed to take the car for his own use, with a replenishing by him of the gasoline which he consumed. But in all of these instances, the accident-driver's use had rested upon a specific request and an express permission, in that the named insured always kept the keys of the car in his personal possession. None of the three or four requests so made by the accident-driver had, however, been refused by the named insured. Usually, though, the time had been specified when the accident-driver was to have the car back at the Base, but on one or two occasions the accident-driver had somewhat exceeded this agreed limit, without any protest on the part of the named insured, when the car was returned.

The accident involved occurred on a Sunday morning, about 2:30 o'clock. On the Saturday preceding, the accident-driver was off duty at noon, but the named insured had to remain on guard duty at the Base until 4 P.M. During the noon hour, the accident-driver asked the named-insured's permission to take the car, for the stated purpose of driving to the nearby village of Bellevue to visit his "girl friend". The named insured turned over the keys of the car to him and at the same time requested him to pick up some "cleaning" for him while he was in Bellevue.

The named insured also took occasion to specify that the accident-driver should have the car back by 4 P.M., when the named insured was to go off duty and would have 4 hours of liberty, and at which time, he indicated, he and the accident-driver could drive to another nearby town to visit a friend, who was laid up with a broken leg. The accident-driver agreed to have the car back by the specified time.

The accident-driver did not, however, bring the car back to the Base until about 6:30 P.M. And he did not thereafter get in touch with the named insured on the Base, although he claimed in his testimony that he had looked around some for the latter. At any rate, he waited until about 8 P.M., when it was of course certain that the named insured would be back on guard duty, before he ventured to take the car off the Base again, accompanied by another soldier, whom he had invited to join him, and utilizing the car to make a round of taverns in Bellevue and Omaha. The visit to his "girl friend", for which he had requested and been given leave to use the car on the afternoon trip, had been entirely completed, when he returned the car to the Base at 6:30 P.M. He admitted that he had no engagement with her for that evening. The evening tavern excursion represented a wholly separate taking and using of the car, for an independent expedition from the Base. It was while he was returning to the Base from this independent expedition, about 2:30 A.M., that the accident occurred.

Thus, the elements of intent, understanding and relationship involved were not, we think, as argued by the injured party here, so absolute or unequivocal in their implication that we would be entitled to say that the trial court had no right, under Nebraska law, to evaluate the situation as one in which the specific and conditioned permission given by the named insured, to a use of the car by the accident-driver until 4 P.M. on Saturday, in order to make a visit to his "girl friend" in Bellevue and to pick up "cleaning" there for the named insured, had not, either expressly or impliedly, on its facts, or in its setting of preceding granted use, encompassed any given or existing consent to an independent taking of the car, after its return to the Base, for a Saturday-night tavern excursion with another companion.

■ Nor, of course, if the trial court could properly find that permission, express or implied, in relation to the use

being made of the car at the time of the accident, had not been sufficiently established as an existing fact, would the named insured's statement or testimony after the accident, that he would have been willing at the time to have given his consent, if it had been requested, be capable of filling the contractual void against the insurer, from the lack of existence of such permission at the time of the accident. Johnson v. State Farm Mutual Automobile Ins. Co., 8 Cir., 194 F.2d 785, 787.

Affirmed.