UNITED STATES FIDELITY AND GUARANTY COMPANY, A MARYLAND CORPORATION, APPELLANT, v. DAVID R. FISHER, JAMES BOND, AND NORMA BOND, RESPONDENTS.

No. 6611

March 2, 1972                              494 P.2d 549

[Rehearing denied April 19, 1972]

*Cromer and Barker,* of Las Vegas, for Appellant.

*Wiener, Goldwater, Galatz & Raggio, Ltd.,* and *J. Charles Thompson,* of Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

The United States Fidelity and Guaranty Company commenced this action in the district court by filing a complaint for a declaratory judgment to determine whether the omnibus clause coverage contained in an insurance policy issued to one Zelda Link extended to Respondent David R. Fisher, who, while driving Zelda's car, was involved in an accident with a vehicle owned by Respondents James and Norma Bond. The district judge ruled that David was insured under the omnibus clause, as he had Zelda's permission to operate the vehicle. We affirm that ruling.

1. *The Facts.*

They are substantially undisputed and they are as follows. The Company issued to Zelda Link its customary motor vehicle liability insurance policy. The policy contained an omnibus

clause naming those persons insured thereunder, as prescribed by NRS 485.3091, subsection 2.[1] The policy issued to Zelda, in naming those insured, included "any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

On June 30, 1968, Zelda asked David, a next-door neighbor, to drive her in her car to McCarran Airport in Clark County, as she was leaving town on vacation. Zelda told David to park the car in the driveway at his residence during her absence and to move the car in case of an emergency. Zelda had on several prior occasions given David permission to use the car in going to and from his place of employment and also on shopping tours.

On July 7, 1968, while Zelda was still on holiday, David used the car and had an accident involving the Bond vehicle. The Bonds have sued Zelda and David and were about to default David when the Company stepped into this present litigation and asked the court below to decide whether its liability insurance coverage extended to David. This is the sole issue presented on appeal.

2.   *The Omnibus Clause Coverage.*

The Company's liability insurance coverage may extend to David if he was operating Zelda's car with her permission at the time of the accident. The courts have adopted one of three views in determining whether a person who has received initial permission from an owner to drive his vehicle and then later deviates therefrom is covered by the omnibus liability insurance clause. These views have been well summarized in Matits v. Nationwide Mut. Ins. Co., 166 A.2d 345, 347 (N.J. 1960), as follows:

---

[1]NRS 485.3091, subsection 2:

"2.   Such owner's policy of liability insurance shall:

"(a) Designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"(b) Insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $15,000 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $30,000 because of bodily injury to or death of two or more persons in any one accident, and $5,000 because of injury to or destruction of property of others in any one accident."

". . . (1) The liberal or so-called 'initial permission' rule that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in his possession though not within the contemplation of the parties is a permissive use within the terms of the omnibus clause; for cases so holding, see Annotations, 72 A.L.R. 1375, 1405–09 (1931); 106 A.L.R. 1251, 1262 (1937); 126 A.L.R. 544, 553–55 (1940); 5 A.L.R.2d 600, 629–36 (1949); (2) the moderate or 'minor deviation' rule that the permittee is covered under the omnibus clause so long as his deviation from the permissive use is minor in nature; Annotations 72 A.L.R., supra, at pp. 1401–03; 106 A.L.R., supra, at p. 1259; 126 A.L.R., supra, at p. 552; 5 A.L.R.2d, supra, at pp. 636–43; and (3) the strict or 'conversion' rule that any deviation from the time, place or purpose specified by the person granting permission is sufficient to take the permittee outside the coverage of the omnibus clause; Annotations 72 A.L.R., supra, at pp. 1403–05; 106 A.L.R., supra, at pp. 1260–62; 126 A.L.R., supra, at pp. 552–53; 5 A.L.R.2d, supra, 626–29. For additional authorities discussing these rules, see 7 Appleman, Insurance 169–181 (1942); Putman, 'The Standard Automobile Policy: What Persons and Which Vehicles are Covered,' 11 Ark.L.Rev. 20 (1956–57); Ashlock, 'Automobile Liability Insurance: The Omnibus Clause,' 46 Iowa L.Rev. 84, 102–118 (1960)."

A reading of the findings of fact and conclusions of law filed by the learned trial judge leads us to believe that the court adopted the "initial permission" rule in finding that David at the time the accident occurred had Zelda's permission to use her car. For the reasons expressed in this opinion, we adopt the "initial permission" rule as controlling.

As Chief Justice Weintraub wrote in his dissent in Baesler v. Globe Indem. Co., 162 A.2d 854, 859 (N.J. 1960), which dissent was cited in part, with approval, in the later case of Odolecki v. Hartford Accident & Indem. Co., 264 A.2d 38 (N.J. 1970):

"People contract for results, presumably sensible ones. Words are mere vehicles to convey their intention. Perfect expression is rare, particularly in the composition of a general covenant when the draftsman can not foresee all cases which may call it into play."

Zelda, as the named insured, was covered by the liability policy, and the omnibus clause extended coverage to "any other person using such automobile with the permission of the

Named Insured, provided his actual operation . . . is within the scope of such permission."

Nevada's "motor vehicle liability policy," defined in NRS 485.3091, subsection 2(b), of the Safety Responsibility Act, declares in part that every such insurance policy shall "[i]nsure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured."

Keeping in mind the policy announced by our Legislature, we turn to examine the omnibus clause coverage in this case.

We know that contracting parties cannot contemplate every possible situation and spell out in advance their understanding as to each situation that might develop. If we are to interpret the intention of the parties, we must seek the reason for the extended coverage and be guided by that reason.

Zelda bought and paid for the protection of others who might drive her car. Conspicuous is the fact that she was vested with plenary authority to determine who should be the beneficiary of the contract. Whether she permitted one or a hundred to drive her car, the premium remained the same. The Company was paid for a policy under which Zelda as the named insured could extend the liability coverage to whomever she pleased.

Zelda on numerous occasions had given David permission to drive the car. The car in a sense was entrusted to David while Zelda was away on vacation. He had instructions to move the car if in his judgment it was necessary, and it is reasonable to assume, under the factual posture presented in this case, that when he drove the car on July 7, 1968, he had Zelda's implied permission to do so. Surely, it would not have been Zelda's intention to restrict insurance coverage to moving the car on the driveway. Applying the "initial permission" rule in the instant case, we rule that David was covered by the liability policy under the terms of the omnibus clause contained therein. Many reasons have been advanced that favor the adoption of the "initial permission" rule. As the court said in Odolecki v. Hartford Accident & Indem. Co., *supra,* 264 A.2d at 42:

". . . [A]s Chief Justice Weintraub pointed out in his dissent in *Baesler:* 'A named insured untutored in law and fearful that his consent might lead to his own liability for damages in excess of the policy limits (indeed by statute in some jurisdictions he would be so liable) may well be tempted to invent a claim that he prohibited others to drive or to convert a precatory request

into a binding prohibition.' . . . We add that the fear of insurance policy cancellations might well have the same effect."

An even more powerful argument in favor of the "initial permission" rule is the important policy of assuring that all persons wrongfully injured have financially responsible persons to look to for damages. In other words, a liability insurance policy is for the benefit of the public as well as for the benefit of the named insured. Our Legislature has spoken on the issue, as evidenced by NRS 485.3091, subsection 2, of the Safety Responsibility Act, *supra*. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is irrelevant. Making coverage turn on the scope of permission given in the first instance renders coverage uncertain in many cases. Such practice fosters litigation regarding the existence or extent of any possible deviation, and it obstructs achievement of the policy declared by the Legislature. As the court said in Matits v. Nationwide Mut. Ins. Co., *supra,* 166 A.2d at 349:

". . . We think that the 'initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies."

We therefore rule that if a person is given permission by an insured owner to use a motor vehicle in the first instance, any subsequent use while the vehicle remains in the person's possession is a permissive use within the terms of a standard automobile liability insurance policy.

The judgment is affirmed.

Zenoff, C. J., and Batjer, Thompson, and Gunderson, JJ., concur.