COMMERCIAL UNION INSURANCE COMPANY
*v.* Ray JOHNSON d/b/a Johnson Transport Service
and Shelter Insurance Companies

87-328                                          745 S.W.2d 589

Supreme Court of Arkansas
Opinion delivered February 1, 1988

*Hankins, Capps, Hicks & Madden*, by: *Paul D. Capps*, for appellant.

*Odell Pollard, P.A.*, by: *Margaret Bunn*, for appellee.

DAVID NEWBERN, Justice. ▮ The issue in this case is whether an insurer may be liable pursuant to the omnibus clause

in an automobile liability policy for injuries caused by a driver whose use of the insured automobile has exceeded the permission given by the automobile's owner. While the "scope of permission" issue has been decided in many other courts, and in several different ways, it is a question of first impression for this court. We hold that if permission has been given by the insured owner of the insured vehicle to a driver who then causes injury or property damage during the permissive use, insurance coverage pursuant to an omnibus clause is not affected by the fact that the permissive use may have exceeded or differed from that which was specified or intended by the owner.

Appellee Ray Johnson, d/b/a Johnson Transport Service, obtained a judgment against Marty Self as the result of an automobile accident. Johnson then, along with appellee Shelter Insurance Companies, which claimed a subrogation interest, brought this action against Commercial Union Insurance Company for the damages Johnson had recovered in the earlier action as well as for attorney fees and a 12% penalty. They alleged that Commercial Union was liable under a policy it had issued to Brett Davis, whose automobile Self was driving when the accident occurred. Their contention was that Brett Davis's wife, Teresa Davis, had given Self permission to drive Brett Davis's car, and thus the omnibus clause in the policy issued by Commercial Union to Davis extended coverage to the accident.

In response to a request for admissions, Commercial Union admitted that Brett Davis was its insured, that Teresa Davis was Brett Davis's wife, and that a person driving Brett Davis's car with permission of Teresa Davis would be an insured under the policy if operating the vehicle "totally within the scope of consent and permission of Teresa Davis." The response concluded as follows: "[Commercial Union] takes the position that Marty Self was outside the scope of any permission given by Teresa Davis."

Johnson and Shelter moved for summary judgment with affidavits including one from Self who stated that Teresa Davis had asked him to take the car to buy cigarettes for her and that the accident had happened on Highway 79 as he was going to purchase the cigarettes at Clarendon. In its response to the motion for summary judgment, Commercial Union referred to its earlier response to requests for admissions, noted above, and

attached the affidavit of Teresa Davis in which she denied she had asked Self to use the car to purchase cigarettes for her but stated he had asked to borrow the car and she had allowed him only to drive it on a country road for a short distance. She stated that Self drove the car on the highway in violation of the permission she had given.

In his order granting summary judgment in favor of Johnson and Shelter, the circuit judge found that: "Commercial may not deny coverage due to the fact that Teresa Davis issued limitations on the manner of usage of the insured automobile." We agree with that statement, and thus we affirm the summary judgment.

The Arkansas Motor Vehicle Safety Responsibility Act, particularly Ark. Code Ann. § 27-19-713(b) (1987) provides: "Owner's Policy. The owner's policy of liability insurance shall: . . . (2) Insure the person named therein and any other person, as insured, using any vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the . . . use of the vehicle . . . ." While we do not have in the record before us the policy issued by Commercial Union to Brett Davis, we assume that it was in compliance with the statute. Although the words, "with the express or implied permission," are not limited in any way, we recognize that the word "permission" might legitimately be defined as including only such usage of a car as was intended by the owner, expressly authorized or limited by the owner, or perhaps agreed to by the owner and the intended user. We can conceive of situations in which the expressed authorization or limitation stated by the giver of permission might lead to various reasonable inferences on the part of the user as to the extent of the permission given. While we have before us a swearing match rather than an issue of meaning or innuendo in determining the extent of permission, by holding that the extent of permission is irrelevant, the trial judge has given us the opportunity to decide, as a policy matter, whether any consideration beyond whether permission was given should matter.

Commercial Union presents two arguments. First, it contends that in order for us to hold Self had permission we must find an agency relationship between Self and Brett or Teresa Davis. A number of "scope of employment" cases are cited and discussed,

none of which purports to apply to the situation before us. Commercial Union gives us no explanation why "scope of employment" cases should apply to ascertaining whether "scope of permission" has been exceeded. While we will note later in this opinion that the Arizona Supreme Court has held that the driver of a motor vehicle is rebuttably presumed to be the agent of its owner, that has to do with whether initial permission to use the vehicle has been given rather than whether deviation from the scope of permissive use has occurred. Even the most rigorous of thinkers have sometimes been temporarily led astray by the "scope of employment" argument, *see* W. Davis, *Is George T. Frampton Human?*, 1987 U. Ill. L. Rev. 9, 11, but we decline to explore it in the absence of some authority or convincing argument that the cases on "scope of employment," as used in the agency context, govern the scope of permissive use of an insured vehicle.

As its second argument, Commercial Union contends that Nebraska has a statute like our § 27-19-713(b) and that the United States Court of Appeals for the Eighth Circuit noted, in *Bekaert* v. *State Farm Mutual Automobile Insurance Co.*, 230 F.2d 127 (8th Cir. 1956), that Nebraska had not interpreted it so liberally as to say that, as a matter of law, permission to use an insured vehicle extends coverage no matter what use, short of conversion of the vehicle, may be made of it. While that may have been the case in 1956, the Nebraska Supreme Court, in 1969, reviewed its somewhat conflicting cases interpreting omnibus insurance clauses and clearly recognized its commitment to the "initial permission" rule which it described as follows: "if permission to use the automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used." *Arndt* v. *Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969). The court also made it clear that its decisions on this question were not tied to the Nebraska statute to which the court of appeals referred, but depended on the language of the insurance agreement.

While we do not find ourselves with conflicting decisions to reconcile or choose among, as did the Nebraska Supreme Court in 1969, we are faced with the same choice among possible rules of interpretation of omnibus clauses, and we find the Nebraska court's discussion helpful:

There is a considerable volume of law dealing with the interpretation of omnibus clauses such as the one presented in this case. It appears, generally speaking, that three different rules have been followed. The first is the so-called strict or conversion rule to the effect that the exact use of the automobile at the time and place of the accident must have been with the express or implied permission of the employer. The second is the moderate or minor deviation rule which permits recovery when the deviation from the permission granted is of a minor nature. The third is the liberal or initial permission rule to the effect that if permission to use the automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used. Proponents of this rule justify it on the ground that it is good public policy to protect persons injured in automobile accidents against uninsured motorists. They further justify the rule on the theory that the purpose of the omnibus clause is to broaden the coverage of the policy to cover all persons operating the insured automobile with the knowledge and consent of the insured owner and insist that once the owner has placed the automobile in the possession of the driver and consented to his operating the automobile, any deviation from the purposes for which the automobile was entrusted to the operator is immaterial. The first two rules mentioned appear to limit the insurer's liability primarily to the liability of the insured. The third or liberal rule goes beyond this and holds the insurer liable even in cases where the owner is not liable on the theory of respondeat superior, family purpose doctrine, etc. See Annotation, 5 A.L.R.2d 600. [163 N.W.2d at 887-888]

We have found a similar, updated, discussion in 6C J. Appleman, *Insurance Law and Practice*, §§ 4366-4368 (1977). That treatise, in discussing the "initial permission" rule states in § 4366:

§ 4366. Permission—Deviation from Permission Granted— (a) Hell or High Water Rule

A number of states have apparently felt that even an ordinary automobile liability insurance contract is as

much for the benefit of members of the public as for the benefit of the named or additional insured. Therefore, upon an injury occurring they have felt it undesirable to permit litigation as to the use made of the vehicle, the scope of permission, purposes of the bailment, and the like. These states have arbitrarily adopted a doctrine that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. This rule is also, albeit less colorfully, known as the initial permission rule. It should be noted, however, that a minority of jurisdictions have rejected the rule.

A deviation from the permitted use is absolutely immaterial under this rule. Nor has it been considered conclusive that the time limit of the permission had expired. The only essential thing is that permission be given for use in the first instance. In fact, Illinois has held that the insured owner of a car cannot limit the scope of the permission given, certainly a strange result in view of the fact such owner could sue that bailee for conversion of the automobile in exceeding his permission.

Of course, the rule that initial permission will suffice applies only when that permission was actually granted to the user sought to be brought within the coverage of the policy.

North Carolina has held that by adding to the persons insured under an owner's liability policy "any other persons in lawful possession" of the insured's vehicle, the legislature intended a change in the liability insurance coverage previously required by the statute, so that when the lawful possession of a vehicle is shown, further proof is not required to show that the operator had the owner's permission to drive on the very trip and occasion of the collision. [Footnotes omitted]

The Nevada Supreme Court, in *United States Fidelity and Guaranty Co.* v. *Fisher*, 88 Nev. 155, 494 P.2d 549 (1972),

adopted the initial permission rule. After considering the various authorities and the three basic constructions of omnibus clauses, as we have done, the court stated:

> As Chief Justice Weintraub wrote in his dissent in Baesler v. Globe Indem. Co., 33 N.J. 148, 162 A.2d 854, 859 (1960), which dissent was cited in part, with approval, in the later case of Odolecki v. Hartford Accident & Indem. Co., 55 N.J. 542, 264 A.2d 38 (1970):

> "People contract for results, presumably sensible ones. Words are mere vehicles to convey their intention. Perfect expression is rare, particularly in the composition of a general covenant when the draftsman can not foresee all cases which may call it into play."

> . . . .

> Nevada's "motor vehicle liability policy," defined in NRS 485.3091, subsection 2(b), of the Safety Responsibility Act, declares in part that every such insurance policy shall "[i]nsure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured."

> . . . .

> We know that contracting parties cannot contemplate every possible situation and spell out in advance their understanding as to each situation that might develop. If we are to interpret the intention of the parties, we must seek the reason for the extended coverage and be guided by that reason.

> Zelda [the insured] bought and paid for the protection of others who might drive her car. Conspicuous is the fact that she was vested with plenary authority to determine who should be the beneficiary of the contract. Whether she permitted one or a hundred to drive her car, the premium remained the same. The company was paid for a policy under which Zelda as the named insured could extend the liability coverage to whomever she pleased.

. . . .

Many reasons have been advanced that favor the adoption of the "initial permission" rule. As the court said in Odolecki v. Hartford Accident & Indem. Co., *supra* [55 N.J. 542, 264 A.2d 38 (1970)], 264 A.2d at 42:

". . . [A]s Chief Justice Weintraub pointed out in his dissent in *Baesler*: 'A named insured untutored in law and fearful that his consent might lead to his own liability for damages in excess of the policy limits (indeed by statute in some jurisdictions he would be so liable) may well be tempted to invent a claim that he prohibited others to drive or to convert a precatory request into a binding prohibition' . . . We add that the fear of insurance policy cancellations might well have the same effect."

An even more powerful argument in favor of the "initial permission" rule is the important policy of assuring that all persons wrongfully injured have financially responsible persons to look to for damages. In other words, a liability insurance policy is for the benefit of the public as well as for the benefit of the named insured. Our Legislature has spoken on the issue, as evidenced by NRS 485.3091, subsection 2, of the Safety Responsibility Act, *supra*. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is irrelevant. Making coverage turn on the scope of permission given in the first instance renders coverage uncertain in many cases. Such practice fosters litigation regarding the existence or extent of any possible deviation, and it obstructs achievement of the policy declared by the Legislature. As the court said in Matits v. Nationwide Mut. Ins. Co., *supra*, 166 A.2d at 349:

". . . We think that the 'initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies." [88 Nev. at 158-60, 494 P.2d at 551-553]

In *Milbank Mutual Insurance Co.* v. *U.S. Fidelity and Guaranty Co.*, 332 N.W.2d 160 (Minn. 1983), the Minnesota

Supreme Court noted that it had previously used primarily the "minor deviation" rule in interpreting omnibus clauses with the exception of cases in which a minor had been granted permission to use a vehicle, in which instance the "initial permission" rule was used. The question in the *Milbank* case was whether to extend the "initial permission" rule to cases in which an adult had given permission to another adult. The court referred to Minn. Stat. Ann. § 170.54 (1986) which provided that a person operating another's vehicle with the "consent" of the owner is to be deemed the agent of the owner in the operation of the vehicle. While that statute making an owner responsible is different from our statute stating that which a vehicle owner's insurance policy shall contain, they are ostensibly reflective of the same public policy, that is, the extension of financial responsibility for vehicle accidents to as broad a segment of the populous as can fairly and reasonably be done. In holding that the "initial permission" rule affects that policy and should be applied universally, the court said:

> Today, the initial permission rule is said to be supported by the "weight of authority." Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App. 2d 503, 137 N.E.2d 855 (1956). The rule is apparently followed in the courts of Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin and Texas. Primary justification for the "initial permission" rule is that it alone guarantees fulfillment of the state's policy of compensating innocent accident victims from financial disaster. Courts also have recognized that application will discourage collusion between bailor and bailee in order to escape liability; and courts have noted that the "initial permission" rule will greatly reduce a most costly and wasteful type of litigation. *See, e.g., Jordan v. Consolidated Mutual Insurance Co.,* 59 Cal. App.3d 26, 41, 130 Cal. Rptr. 446, 455 (1976) [332 N.W.2d at 166].

The holding of the court was that any violation of the initial permission of the owner of the vehicle by one to whom it had been intrusted, short of theft or conversion, would not relieve the insurer.

In *Visintin* v. *Country Mutual Insurance Company*, 78 Ill.

App. 2d 75, 222 N.E.2d 550 (1966), the reason for the adoption of the "initial permission" rule in Illinois was given as follows: "the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; . . ." quoting *Konrad* v. *Hartford Accident & Indemnity Co.*, 11 Ill. App. 2d 503 at 514, 137 N.E.2d 855 at 861 (1956).

We have also examined the cases cited by Appleman, in n. 38.20, § 4366, *supra*, as having rejected the "initial permission" rule. In *Underwriters Insurance Co.* v. *State Automobile and Casualty Underwriters*, 108 Ariz. 113, 493 S.W.2d 495 (1972), the Arizona Supreme Court stated that the "initial permission" rule did not apply, citing cases in which it had held that proof of ownership of an automobile by one other than the driver was "prima facie evidence" that the driver was the agent of the owner. The court then said that if any evidence to the contrary were presented, the presumption vanished. The court did not adopt any particular rule in the case but held that the trial court's finding that there had been no permission given to a mechanic to road test a car would not be set aside because there was substantial evidence to support it. *See also James* v. *Aetna Life & Casualty*, 26 Ariz. App. 137, 546 P.2d 1146 (1976), where it was noted that the supreme court had rejected the "initial permission" rule and thus the court of appeals adopted the "minor deviation" rule, apparently as the next best thing.

Other cases cited by Appleman as having rejected the "initial permission" rule are *Gangel* v. *Benson*, 215 Kan. 118, 523 P.2d 330 (1974), and *Government Employees Insurance Co.* v. *Edelman*, 524 S.W.2d 546 (Tex. Civ. App. 1975). In both of those cases, the permission of the named insured had been given to a first permittee who had then given permission to a second permittee. The evidence in each case showed that the named insured had specified that permission was not to be given by the first permittee to any other person to drive the insured vehicle. Both cases reject the notion that the initial permission extended to the second permittee. A dissenting opinion in the *Gangel* case argues persuasively that the decision goes against the basic policy of protecting the public and places the insured in the position of, in effect, conferring coverage or withholding it by stating after an

accident has occurred whether or not the driver had his or her permission.

The cases adopting the "initial permission" rule usually provide that it governs "short of theft or conversion," *see Milbank Mutual Insurance Co.* v. *United States Fidelity and Guaranty Co., supra*, 332 N.W.2d at 167, or "short of an unlawful taking," *see Odolecki* v. *Hartford Accident & Indemnity Co., supra*, 264 A.2d at 40. Although the question is not before us now, we agree that an insurer should not be liable to a thief or a person who has no permission to use a vehicle and who converts it to his or her own use. With respect to the situation in which one who has permission of the named insured grants permission to another person to use the named insured's vehicle, we make no decision. In this case the car belonged to Brett Davis. Teresa Davis, Brett's wife, had permission to use the car, and she gave permission to Self. However, no issue has been raised as to Self being the second permittee. As we noted at the outset, Commercial Union conceded that if Teresa had given Self permission, Self's use of the car was covered under the policy. Some of the policy reasons for adopting the "initial permission" rule probably apply in the "second permittee" case to the same extent that they apply no matter how greatly the person having permission of the named insured may deviate from the permitted route or use, but we leave that question open.

Our holding is that the "initial permission" rule applies in Arkansas, and that the trial judge was correct in holding that the extent of route deviation by Self in the driving of the Davis vehicle is thus immaterial.

Affirmed.

HICKMAN, HAYS, and GLAZE, JJ., concur.

TOM GLAZE, Justice, concurring. While I agree with the result reached by the majority, I cannot join its efforts to extend the holding further than the facts in this case warrant. The situation here involves an insured who gave permission to a friend to run an errand. Although the insured limited her friend's use of the vehicle, by saying the vehicle could be driven on a county road, the friend violated those instructions by driving on a state highway upon which he collided with another vehicle. In sum, the

friend failed to follow the insured's instructions and permission, but his deviation from the permitted route was minor.

The majority now adopts a rule which extends insurance coverage to all situations, regardless of how grossly the person using the vehicle violates the original terms of the entrustment or bailment. I have a strong reluctance to adopt such an all-inclusive rule, especially when the facts here do not require it and the parties do not brief or argue the various rules set out in the majority opinion.

Suffice it to say, there are jurisdictions—noted by the majority—that have rejected the "initial permission" or "Hell or High Water" rule the majority adopts today. There are compelling and sound reasons to reject a rule that extends insurance coverage to situations where a person grossly violates the trust of an insured who permits the person to use the insured's vehicle. Until the proper facts and arguments are before the court on this issue, the court should limit its decision, leaving open the issue of whether Arkansas should adopt such a rule.

HICKMAN and HAYS, JJ., join in this concurrence.