788 P.2d 340

ALLSTATE INSURANCE COMPANY,
Plaintiff–Appellee,

v.

Daniel Lee JENSEN and Gary Wayne
Caldwell, Defendants,

v.

James L. BOUTELLE,
Defendant–Appellant.

No. 18374.

Supreme Court of New Mexico.

Jan. 23, 1990.

W.T. Martin, Jr., Carlsbad, for defendant-appellant.

Bradley & McCulloch, Gordon McCulloch, Albuquerque, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

James Boutelle has a personal injury claim against David Jensen. Allstate Insurance Company brought this declaratory judgment action to determine its obligation to defend Jensen under the omnibus or permissive driver clause of an automobile insurance policy issued to Gary Caldwell. Boutelle appeals from a summary judgment in which the district court ruled that Allstate had no duty to defend Jensen. We affirm, but for reasons other than the "significant deviation" rule relied upon by the court below.

In 1984, Jensen and Caldwell were employed on a bridge construction project near Carlsbad, New Mexico. On the night of May 23, Jensen came to Caldwell's motel room in Carlsbad to pay a social call and asked Caldwell if he could borrow his pick-up truck to drive to a nearby convenience store for cigarettes. Caldwell let Jensen borrow the truck, but when Jensen left he headed in the opposite direction from the store. Apparently, Jensen had consumed an enormous amount of beer in the preceding twenty-four hours, as much as three cases. He had socialized with Caldwell that day and had drank another beer in Caldwell's room before taking the truck

that evening. Caldwell had questioned him as to whether he thought he was fit to drive, and he said "yes". In his deposition, he stated that after leaving the motel "all of a sudden I wound up on the Hobbs highway with state policeman Hickey trying to pull me over."

A high speed chase ensued, through Carlsbad and the surrounding countryside, involving members of both the state and Carlsbad police. Jensen evaded one roadblock when Carlsbad police officers removed their vehicles from the road after deciding that Jensen had no intention of slowing down as he approached them. Later, James Boutelle, a Carlsbad police officer, pulled up alongside Jensen while they were traveling on the Artesia highway. Jensen rammed the truck into the police vehicle rolling it over and off the road. He was finally apprehended after he rammed a second roadblock and destroyed two police vehicles in the process. He told the police, "I wish I had taken a couple of you with me." Jensen was charged with multiple criminal violations and was later sentenced to the New Mexico penitentiary.

Boutelle was injured when he was forced off the road. He later filed suit against Jensen for negligent and intentional acts, and against Caldwell for negligent entrustment. Allstate sought a declaratory judgment that, because of Jensen's excessive deviation from his announced purpose for the use of the vehicle, Jensen was not a permissive driver within the meaning of the omnibus clause of Caldwell's insurance policy. In addition to the owner of the vehicle as the named insured, the policy covered "[a]ny other person with respect to the owned automobile, provided the use thereof is with the permission of the insured and within the scope of that permission."

The appellate courts of New Mexico have not addressed the omnibus clause question presented here. *Cf. Gruger v. Western Cas. & Sur. Co.*, 89 N.M. 562, 555 P.2d 683 (1976) (involving whether an owner had given his implied consent to use of his vehicle by a third-party permittee of the original permittee). There is, however, a wealth of decisions from other jurisdictions

that address questions regarding the "scope of the permission" which was given, or whether permission was given for the "actual use" of the vehicle at the time of the accident. *See* Annotation, *Automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause*, 5 A.L.R.2d 600 (1949 & Later Case Service 1985); Ashlock, *Automobile Liability Insurance: The Omnibus Clause*, 46 Iowa L.Rev. 84 (1960). The approaches taken by these decisions have tended to be grouped within one of three categories: (1) the strict rule requiring use precisely within the scope of permission granted, (2) the initial permission rule covering any deviation short of theft or the like, and (3) the intermediate significant or major/minor deviation rule. *See, e.g., Columbia Cas. Co. v. Hoohuli*, 50 Haw. 212, 216, 437 P.2d 99, 103 (1968).

On appeal, Boutelle argues that in light of public policy evinced in the New Mexico Mandatory Financial Responsibility Act of 1983, NMSA 1978, Sections 66–5–201 to 66–5–239 (Repl.Pamp.1989), this Court should adopt either the "initial permission" rule, or what Boutelle calls the "social permittee" rule, and reverse the entry of summary judgment. Allstate urges the adoption of the "significant deviation" rule, and argues that Jensen's gross deviation from the scope of permission bars coverage under the omnibus clause. In ruling on the motion for summary judgment, the trial judge stated: "I agree with [Boutelle] that from a policy point of view this should be changed. Nevertheless, we have case law * * * in New Mexico which * * * binds me. [T]here has been a rather significant deviation from the scope of the permission granted * * *."

The parties agree that coverage under a contract for automobile liability insurance is not solely a function of the intent of the parties and the terms of the contract. Under the Mandatory Financial Responsibility Act, effective January 1, 1984, an owner's certified motor vehicle liability policy must "insure the person named in the policy and any other person, as insured, using any

such motor vehicle with the express or implied permission of the named insured." NMSA 1978, § 66–5–221(A)(2).[1] Both parties assume that this statutory omnibus clause is applicable to the present case. If so, the Allstate contract for liability insurance cannot be more restrictive than the statutory clause.[2] At issue, then, is the extent to which the phrase "with the express or implied permission of the named insured" was intended by the legislature to modify the word "using".

Under the statutory clause, coverage is extended to any person merely "using" the motor vehicle with the express or implied permission of the named insured.[3] Under

---

**1.** The Mandatory Financial Responsibility Act conditions motor vehicle registration on evidence of financial responsibility. NMSA 1978, §§ 66–5–206, –234. A motor vehicle must be covered by a liability insurance policy or a $60,000 cash deposit with the state treasurer, or a surety bond in the same amount. NMSA 1978, §§ 66–5–205, –225, –226.

**2.** Allstate argues that its omnibus clause does no more than clarify what is meant by "permission" in Section 66–5–221(A)(2). However, it is not at all clear to us that, after the passage of the Mandatory Financial Responsibility Act, the provisions of Section 66–5–221 were intended to be applicable to *all* motor vehicle liability policies. We will proceed as if that were the case, but as the issue has not been briefed and argued we will reserve judgment on the question for resolution when appropriate.

The uncertainty concerning the applicability of Section 66–5–221 arises from changes made to the New Mexico financial responsibility laws in 1984. Prior to 1984, registration of motor vehicles was not conditioned upon a showing of financial responsibility. Rather, such a showing was required only in certain cases such as an unsatisfied judgment against a motorist. 1978 N.M.Laws, ch. 35, § 281. A motorist might avoid the suspension of his driver's license and vehicle registration by filing a certificate of insurance with the division of motor vehicles, verifying that the motorist had in effect at the time of the accident a policy meeting the minimum liability coverage provisions of the Financial Responsibility Act. *See* 1978 N.M. Laws, ch. 35, §§ 295, 303, 306. After a policy was certified by such a filing, it could not be canceled without notice to the division. 1978 N.M.Laws, ch. 35, § 308. We decided in *Estep v. State Farm Mutual Insurance Co.,* 103 N.M. 105, 703 P.2d 882 (1985), that *all* motor vehicle liability policies, whether certified or not, were subject to the minimum liability coverage provisions of that act. This was because a motorist could avoid suspension only by certifying that the policy *in effect at the time of the accident* met the minimum requirements of the act. These requirements would include the statutory omnibus clause in effect at that time. *See Estep,* at 108, 703 P.2d at 885.

Under our present statutory scheme, an owner of a motor vehicle applying for registration may give evidence of financial responsibility by having either a "motor vehicle liability policy," or a *"certified* motor vehicle liability policy." NMSA 1978, § 66–5–218 (emphasis added). Sig-

nificantly, the 1984 Act eliminated all provisions that would require a motorist to file a certified policy with the division. In this present Act, while the definition of a certified policy is tied to the minimum coverage requirements of Section 66–5–221 (including the statutory omnibus clause), *see* Section 66–5–202(A), the definition of a "motor vehicle liability policy" is not. *See* NMSA 1978, § 66–5–202(H). The latter is simply defined as an owner's policy meeting the minimum dollar amounts set forth in Section 66–5–208. *Id.* Under these circumstances, we are not willing to accept on its face that "evidence of a motor vehicle liability policy" under Section 66–5–218(A) necessarily incorporates all of the requirements concerning certified policies under Section 66–5–221.

In order to give any meaning at all to Section 66–5–221, these provisions might seem applicable to particular policies when a "certificate of liability insurance" is issued to a policy holder to be carried in his vehicle, in lieu of the policy itself, as evidence of financial responsibility as required by Section 66–5–229(C). In this way, absent an actual policy, certain standard provisions would be known to exist. The motor vehicle division has promulgated an administrative rule which recognizes that a "certificate" which contains certain minimum information is sufficient to meet the requirement of having evidence of financial responsibility carried in the vehicle at all times. Transportation Rule No. 84–1–MVD. However, anomalously, in the absence of filing the certificate with the motor vehicle division, such a policy cannot be considered a certified policy. *See* Sections 66–5–202(A), –219. The use of the term "certified" in this context is foreign to the meaning of that term as it is used both in the present Act and its predecessor. While the present Act still requires that an insurance company notify the motor vehicle division prior to canceling a certified policy, NMSA 1978, Section 66–5–223, we question whether today the division ever receives such notification regarding any policy.

**3.** Implied permission to use a motor vehicle can be inferred from a course of conduct or relationship between the parties, or other facts and circumstances signifying the assent of the owner. *See Gruger v. Western Cas. & Sur. Co,* 89 N.M. 562, 555 P.2d 683 (1976); *Western Cas. & Sur. Co. v. Grice,* 422 F.2d 921 (10th Cir.1970); *see also* 8 P. Kelley, *Blashfield Automobile Law and Practice* §§ 321.7 & 321.10 (rev. 3d ed. 1987).

the Allstate policy, other persons are insured provided the "use" is within "the scope of such permission." While the Allstate policy clearly indicates that permission to use the vehicle is defined by the particular use being made of it at the time of the accident, we do not believe that the statutory provision is so qualified. The purpose of the Mandatory Financial Responsibility Act was stated by the legislature as follows:

> The legislature is aware that motor vehicle accidents in the state of New Mexico can result in catastrophic financial hardship. The purpose of the Mandatory Financial Responsibility Act is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.

NMSA 1978, § 66–5–201.1. This statement of legislative purpose reflects the view that the required automobile liability insurance is for the benefit of the public generally, innocent victims of automobile accidents, as well as the insured. *See Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985). In order to effectuate such legislative policy the statutory omnibus clause must be interpreted broadly.

In Section 66–5–201.1, the legislature has expressed its concern that *operators* of motor vehicles be able to respond in damages. The act defines "operator" as every person who drives or is in physical control of a motor vehicle. *See* NMSA 1978, § 66–5–202(K) & (D). In many instances, an operator's ability to respond in damages will be dependent upon the vehicle owner's contract for liability insurance. This is because the entire focus of the required liability coverage in the act is on liability coverage for motor vehicles. *See* NMSA 1978, §§ 66–5–205, –206. Motor vehicle registration, not a driver's license, is conditioned on meeting the financial responsibility requirements. *See* NMSA 1978, §§ 66–5–206, –234.

An owner may certainly impose restrictions on the particular use of a loaned vehicle, and we do not mean to discourage such agreements between individuals. However, we do not believe the legislature intended that the owner's liability coverage for the motor vehicle be affected by such understandings. Instead, based upon the provisions of the Mandatory Financial Responsibility Act, we conclude that the omnibus clause of the Allstate liability policy must provide coverage to any person using the insured vehicle with the owner's consent, without regard to any restrictions or understanding between the parties on the particular use for which the permission was given.

We wish to emphasize that we construe Section 66–5–221(A)(2) to adopt what may be called the initial permission rule because we believe the legislature intended to accomplish this result. We do not view our decision as a choice among various "rules" employed for the interpretation and application of an omnibus clause in a contract for insurance. We likewise express no opinion on whether the decision in this case and the provisions of the Mandatory Financial Responsibility Act should affect our decision in *Gruger* concerning the coverage afforded a third person using a motor vehicle with the consent of the original permittee of the named insured.

In arguing against the adoption of the initial permission rule, Allstate directs our attention to the statutory omnibus clause adopted in New Hampshire which provides that:

> The Insurance applies to any person who has obtained possession or control of the motor vehicle of the insured with his express or implied consent even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision, however, shall not apply to the use of a vehicle converted with the intent to wrongfully deprive the owner of his property therein.

N.H.Rev.Stat.Ann. § 264:18 VI (1982). This statute leaves little doubt that the New Hampshire legislature intended to extend coverage to permissive users even when the operation of the vehicle was clearly outside of the scope of permission which was granted. *Concord Gen. Mut. Ins. Co. v. Haynes*, 110 N.H. 76, 260 A.2d 99 (1969). Allstate argues that the New Mexico legislature chose not to include such a provision, and that to graft one onto our statute is unwarranted.

While the clarity of the New Hampshire statute is enviable, the wording of our own statute certainly points to the construction we have given it. In examining decisions of other jurisdictions said to have adopted the initial permission rule, we find that in a number of cases those jurisdictions have statutory omnibus clauses very similar to our own. *See, e.g., Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988); *Farm Bureau Mut. Ins. Co. of Idaho v. Hmelevsky*, 97 Idaho 46, 539 P.2d 598 (1975); *Konrad v. Hartford Accident & Indem. Co.*, 11 Ill.App.2d 503, 137 N.E.2d 855 (1956); *United States Fidelity & Guar. Co. v. Fisher*, 88 Nev. 155, 494 P.2d 549 (1972). In addition to public policy considerations underlying the statutory omnibus clause, to greater and lesser degrees, the wording of these statutes has been a significant factor in the adoption of the initial permission rule in those jurisdictions. *See, e.g., Protective Fire & Cas. Co. v. Cornelius*, 176 Neb. 75, 125 N.W.2d 179 (1963).

Also, we note that in California the legislature added to its statutory omnibus clause language to the effect that the use of the loaned vehicle must be within the scope of the permission granted by the named insured. The earlier version of the statute was like our own and was interpreted to adopt the initial permission rule. *See Jordan v. Consolidated Mut. Ins. Co.*, 59 Cal.App.3d 26, 130 Cal.Rptr. 446 (1976). Only with the statutory change was coverage restricted to those situations in which the permissive user was acting within the parameters set by the owner of the vehicle. *Hartford Accident & Indem. v. Abdullah*, 94 Cal.App.3d 81, 156 Cal.Rptr. 254 (1979).

Allstate also cites the court of appeals decision in *Benham v. All Seasons Child Care, Inc.*, 101 N.M. 636, 686 P.2d 978 (Ct.App.), *cert. denied*, 101 N.M. 686, 687 P.2d 743 (1984), and states that this case stands for the proposition that permission to use an automobile can be limited in scope. In *Benham*, an employee was involved in an accident while on a personal mission with his employer's van, which he was authorized to use. The decision was concerned with the question of the liability of the employer under the doctrine of respondeat superior. Such liability is premised upon whether or not an employee is acting within the scope of his employment. *Id.* at 638, 686 P.2d at 980. But, this factor is not the primary test of omnibus clause coverage, although in jurisdictions which do not follow the initial permission rule the "scope of employment" may, in certain cases, be co-extensive with the "scope of permission." *See Columbia Cas. Co. v. Hoohuli*, 50 Haw. 212, 215, 437 P.2d 99, 103 (1968). We see no reason to equate the two. As the *Hoohuli* Court pointed out, the policy considerations which determine whether an employer will be held vicariously liable for the acts of his employee are completely different from the policy considerations involved in determining whether a permittee is an insured under a statutory omnibus clause. *See Id.* at 215 n. 2, 437 P.2d at 103 n. 2.

Our reading of the statutory omnibus clause in Section 66–5–221(A)(2) does not, however, suggest that the owner's motor vehicle liability insurance was intended to extend to any and all persons who might come to operate the vehicle. By conditioning insurance coverage on the word "permission", we believe that the legislature meant to exclude unlawful takings such as theft. In decisions adopting the initial permission rule this has been a recognized limitation. *See, e.g. Matits v. Nationwide Mut. Ins. Co.*, 33 N.J. 488, 166 A.2d 345 (1960) (barring theft or the like); *Maryland Cas. Co. v. Iowa Nat'l Mut. Ins. Co.*, 54 Ill.2d 333, 297 N.E.2d 163 (1973) (same). We hold that wrongful intent to deprive the

owner of his property bars coverage.[4]

■ In addition, an intent to deprive the owner of his property may be shown by the intentional destruction of the vehicle, or that state of mind which evinces an utter disregard for the return of the vehicle or for its safekeeping. The facts of this case raise no genuine issue of fact on that score. No reasonable juror could find that Jensen was innocent of that state of mind which we here hold to vitiate initial permission. We caution, however, that it is not the act of driving while intoxicated that is determinative. Here, it is significant that the owner granted permission with the apparent awareness of the impairment, but we also believe that it was the intention of the legislature that permittees who are guilty of that or similar transgressions be deemed insured under the financial responsibility policies of this state.

For these reasons, we affirm the judgment of the district court.

IT IS SO ORDERED.

SOSA, C.J., and WILSON, J., concur.

---

4. In addition to excluding cases of "theft or the like," some jurisdictions that have adopted the initial permission rule have also made exception for cases involving "conversion". *See, e.g., Commercial Union Ins. Co. v. Johnson,* 294 Ark. 444, 745 S.W.2d 589 (1988); *Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 332 N.W.2d 160 (Minn.1983). Our research indicates, however, that only one court has addressed the meaning of conversion in this context and has rejected the application of the definition of tortious conversion to the exception recognized. *Western States Mut. Ins. Co. v. Verucchi,* 66 Ill.2d 527, 6 Ill.Dec. 879, 363 N.E.2d 826 (1977) (only the intent to permanently or indefinitely deprive the owner of his rights in the property will bar insurance coverage, notwithstanding the fact that the action may have constituted a technical conversion). Similarly, we believe that the rigid use of the elements of this tort would be counterproductive as a standard against which to measure permission.

Under New Mexico law, tortious conversion of property has been defined to include, *inter alia,* the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance of the owner's rights. *Ross v. Lewis,* 23 N.M. 524, 169 P. 468 (1917); *see also Mine Supply, Inc. v. Elayer Co.,* 75 N.M. 772, 411 P.2d 354 (1966); *Taylor v. McBee,* 78 N.M. 503, 433 P.2d 88 (Ct.App.1967). If we were to recognize the tort of conversion as an exception to liability coverage under the statutory omnibus clause, we would reduce our inquiry to a form of the major/minor deviation rule. *See Gelder v. Puritan Ins. Co.,* 100 N.M. 240, 668 P.2d 1117 (Ct. App.1983). This would defeat the general uniformity of coverage for all permissive drivers for the benefit of the public as was intended by the legislature. For this reason, we reject the idea that the tort of conversion will bar coverage under the omnibus clause. The owner may well have a valid claim in tort based upon the injurious misuse of his vehicle, but unless the case rises to the level of theft (larceny) or *criminal* conversion (embezzlement), omnibus clause coverage is unaffected.