## LIBERTY MUTUAL INSURANCE COMPANY
### *v.* Cleophes THOMAS

CA 96-1305                                                    951 S.W.2d 564

Court of Appeals of Arkansas
Division III
Opinion delivered September 17, 1997

*Friday, Eldredge & Clark*, by: *James C. Baker* and *R. Christopher Lawson*, for appellant.

*James Gerard Schulze* and *William Gary Holt*, for appellee.

JOHN E. JENNINGS, Judge. This case presents a question in the law of insurance. The facts are not in dispute. On June 6, 1994, James Austin rented a 1994 Ford Probe from Trotter Ford in Pine Bluff. The rental agreement he signed provided that he would use the vehicle in conformity with all laws and would refrain from using it while under the influence of intoxicants.

Later that day Mr. Austin became intoxicated and rear-ended a car driven by the appellee, Cleophes Thomas. Thomas sued Austin and obtained a default judgment for $17,500.00. In October 1995, Thomas filed a direct action against appellant, Liberty Mutual Insurance Company, the liability carrier for Trotter Ford. Liberty Mutual defended on the basis that Austin had violated the terms of the rental agreement by driving under the influence of alcohol. The circuit court granted Thomas's motion for summary judgment and Liberty Mutual appeals. We affirm.

■ The circuit judge held that the supreme court's decision in *Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988), controlled. We agree. In *Commercial Union*, the liability carrier's insured, Teresa Davis, loaned her car to Marty Self with the express restriction that he drive it only "on a county road for a short distance." Instead, Self drove the car upon a highway and collided with a vehicle driven by Ray Johnson. Johnson obtained a judgment against Self and then sued Commercial Union directly. In granting summary judgment in favor of Johnson the circuit court held that, "Commercial [Union] may not deny coverage due to the fact that Teresa Davis issued limitations on the manner of usage of the insured automobile." *Commercial Union Ins. Co. v. Johnson*, 294 Ark. at 446. The supreme court affirmed:

> We hold that if permission has been given by the insured owner of the insured vehicle to a driver who then causes injury or property damage during the permissive use, insurance coverage pursuant to an omnibus clause is not affected by the fact that the permissive use may have exceeded or differed from that which was specified or intended by the owner.

*Commercial Union* at 445.

In the course of its opinion the supreme court considered both authority and policy. The court quoted with approval from *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969). There the Nebraska Supreme Court said:

> Proponents of this rule ["initial permission rule"] justify it on the ground that it is good public policy to protect persons injured in automobile accidents against uninsured motorists. They fur-

ther justify the rule on the theory that the purpose of the omnibus clause is to broaden the coverage of the policy to cover all persons operating the insured automobile with the knowledge and consent of the insured owner and insist that once the owner has placed the automobile in the possession of the driver and consented to his operating the automobile, any deviation from the purposes for which the automobile was entrusted to the operator is immaterial.

*Commercial Union*, 294 Ark. at 448.

The *Commercial Union* court stated that other cases which have adopted the rule usually provide that it governs "short of theft or conversion." 294 Ark. at 454. Appellant argues that Austin's use of the vehicle while under the influence of alcohol constituted a conversion. Appellant notes that the *Restatement (Second) of Torts* § 228 (1965) provides that "[o]ne who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is seriously violated." The *Restatement (Second) of Torts* § 222A, in defining what constitutes a conversion, gives these examples in comment d:

25. A rents an automobile to B to drive to X City and return. In violation of the agreement, B drives to Y City, ten miles beyond X City. No harm is done to the car. This is not a conversion.
26. The same facts as in illustration 25, except that while the car is in Y City it is seriously damaged in a collision, with or without negligence on the part of B. This is a conversion.

Obviously, if a technical conversion such as the one given in the example in the *Restatement (Second) of Torts* provided an exception to the initial-permission rule, the plaintiff in *Commercial Union* would not have prevailed. This is not, however, what the supreme court had in mind. The court said, "Although the question is not before us now, we agree that an insurer should not be liable to a *thief or a person who has no permission to use a vehicle* and who converts it to his or her own use." *Commercial Union*, 294 Ark. at 454 (emphasis added).

Appellant also argues that Austin's gross misuse of the vehicle warrants a weighing of competing public policies and that the State's interest in protecting the public from drunk drivers outweighs the competing interest in protecting the public from uninsured motorists. The argument is based in part on the concurrence of three justices in *Commercial Union* written by Justice Glaze:

> The majority now adopts a rule which extends insurance coverage to all situations, regardless of how grossly the person using the vehicle violates the original terms of the entrustment or bailment. I have a strong reluctance to adopt such an all-inclusive rule, especially when the facts here do not require it and the parties do not brief or argue the various rules set out in the majority opinion.
>
> Suffice it to say, there are jurisdictions — noted by the majority — that have rejected the "initial permission" or "Hell or High Water" rule the majority adopts today. There are compelling and sound reasons to reject a rule that extends insurance coverage to situations where a person grossly violates the trust of an insured who permits the person to use the insured's vehicle. Until the proper facts and arguments are before the court on this issue, the court should limit its decision, leaving open the issue of whether Arkansas should adopt such a rule.

While we might well appreciate the point made by the concurring justices, our duty is to follow the majority decision. Beyond that, we agree with the appellant that this State has a strong policy of discouraging driving while intoxicated and also has a policy against driving through stop signs. Both are forbidden by the rental agreement in the case at bar. It seems unlikely, however, that a clause in a liability insurance contract relieving the carrier from liability because of its insured's violation of these or any other traffic laws would be upheld. Arkansas Code Annotated section 27-19-713(f)(1) (Repl. 1994) provides that no violation of a motor-vehicle liability policy shall defeat or void that insurance policy. A state's public policy is best evidenced by its statutes. *See Guaranty Nat'l Ins. v. Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). If, as it seems, a liability carrier may not escape liability based on a violation of law by its own insured, may

it then obtain the same object by way of restrictions contained in its insured's rental agreement?

We conclude that the supreme court's decision in *Commercial Union* governs this case, in principle; that a technical conversion under the law of torts does not provide an exception to the initial-permission rule; that public policy considerations do not require reversal; and that the decision of the trial court must be affirmed.

Affirmed.

MEADS and ROAF, JJ., agree.