Edna BYERS, personal representative
of the estate of Patrick A. Duncan,
Plaintiff–Respondent,

v.

AUTO–OWNERS INSURANCE
COMPANY, Defendant–
Appellant.

No. 25440.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 21, 2003.

JoAnne Spears Jackson, Yates, Mauck, Bohrer, Elliff & Croessmann, P.C., Springfield, for appellant.

Clifton M. Smart III, Neil Chanter, The Strong Law Firm, P.C., Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Patrick A. Duncan ("Duncan") was killed in an automobile accident in Arkansas. The driver of the other vehicle, Jason Klein ("Klein"), resided in the State of Arkansas as did the insured, Dennis Honl ("Honl"), an employee of Fred C. Stoker & Sons, Inc. ("Stoker"). Stoker, a Tennessee corporation that engages in the manufacture and distribution of pouch tobacco, owned the automobile that Klein was driving and insured it with Auto–Owners Insurance Company ("Auto–Owners"). Auto–Owners appeals the grant of summary judgment against it wherein the court found that Auto–Owners was subject to an equitable garnishment action by a Missouri resident, Edna Byers ("Byers") as the personal representative of the Duncan estate. We affirm.

The pleadings and other documents before us reveal the following: Auto–Owners, which maintains an underwriting and claims office in Brentwood, Tennessee, began providing commercial automobile liability coverage for Stoker in 1994, through the Dresden Insurance Agency in Dresden, Tennessee. The premiums and the policy were renewed yearly and paperwork frequently moved from the Dresden agency to the Auto–Owners office in Brentwood. The policy provided liability insurance on vehicles owned or leased by Stoker with each vehicle being assigned to a specific, identified driver who was a Stoker employee. In 1998, Honl, was added to the policy as the driver of a 1999 Chevrolet Venture minivan. While the van was licensed in Tennessee, Mr. Honl was a resident of Hot Springs, Arkansas, had an Arkansas driver's license, and would be driving the van exclusively within the 100 mile radius of his Arkansas home. Stoker instructed Honl and its other employees that the vans were not for personal use and further required them to sign a memorandum agreeing that they would be the sole drivers of the vehicles assigned to them.

On August 20, 2000, Honl permitted his wife, Robin Honl ("Mrs. Honl"), to drive the insured minivan to Fayetteville, Arkansas. On the return trip, Mrs. Honl allowed her daughter's boyfriend, Klein, who was also an Arkansas resident, to drive the van. While he was driving, Klein was involved in a motor vehicle accident that killed not only Mrs. Honl but the driver of the other vehicle, Duncan. Byers, the personal representative of the estate of Duncan, filed a wrongful death action against Klein in United States District Court for the Western District of

Arkansas. On October 31, 2001, a judgment was entered against Klein in Arkansas, the jurisdiction where the accident occurred, Klein resided, and the insured van was garaged.

On February 16, 2001, Auto–Owners filed a declaratory judgment action in Weakley County, Tennessee, the location of the agency that issued the Stoker policy, Dresden Insurance Agency. Auto–Owners' suit against Byers sought a declaration of its rights and obligations to Klein by virtue of the insurance policy it issued to Stoker. On March 23, 2001, Byers filed a Motion to Dismiss based on a lack of personal contacts with the state of Tennessee and the doctrine of *forum non conveniens.*[1] An entry of summary judgment was entered and the Weakley County Court found that Auto–Owners had no duty to defend Klein or to pay the Arkansas judgment against him.

Thereafter, on December 11, 2001, Byers filed a Petition for Equitable Garnishment against Auto–Owners in the Circuit Court of Greene County, Missouri for the full amount of the Arkansas judgment against Klein. Both parties filed motions requesting summary judgment on issues of law. The parties agreed that there were no issues of material fact and that summary judgment was an appropriate remedy for either party, depending upon the resolution of two issues: 1) whether the law of Tennessee or Arkansas applied to the insurance coverage issue, and 2) whether Klein was a permissive user under the law of Tennessee or Arkansas.[2]

Our review is essentially *de novo.* *ITT Commercial Finance v. Mid–Am. Marine Supply,* 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law; therefore, we need not defer to the trial court's order. *Id.* This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court initially uses. *Quaker Oats Co. v. Stanton,* 96 S.W.3d 133, 136 (Mo.App. W.D.2003). Consequently, our only question is whether the trial court drew the proper legal conclusion from the stipulated facts and cross motions for summary judgment on undisputed facts. Even if "the parties in cross motions for summary judgment would agree that all facts [are] undisputed," the proceeding is not converted to a non-jury trial under Rule 73.01[3]; the standard remains that which is applicable to any grant of summary judgment. *Quaker Oats,* 96 S.W.3d at 136.

Auto–Owners brings three points on appeal. First, Auto–Owners contends that under a conflict of laws analysis, the trial court erred in applying Arkansas law rather than Tennessee law to the issue of which individuals would be covered as insureds under the policy at issue. The trial court found that § 193 of the *Restatement (Second) of Conflicts Law* (1971), which discusses applying the law of the principal location of the insured risk, is controlling over the "significant contacts" section found in § 188. Therefore, the trial court applied Arkansas law and determined that Klein was a permissive user of the vehicle under the Arkansas "initial-permission"

---

**1.** The procedural history of the summary judgment will be discussed infra.

**2.** In its motion, Auto–Owners did not contest Byer's position that Byers would prevail if Arkansas law was followed. It argued instead that Tennessee law applied and that it should

prevail under Tennessee law. That position is consistent with Point I of Auto–Owners' argument and will be addressed in this point.

**3.** All rule references are to Supreme Court Rules (2002), unless otherwise stated.

rule.[4] Had the trial court found Tennessee law to be controlling, Auto–Owners would have prevailed. Tennessee does not follow the initial-permission rule, but instead has adopted the "specific purpose rule," under which the issue is whether the permittee was given general custody of the car or limited permission to use the car. *Estate of Adkins v. White Consol. Indus. Inc.*, 788 S.W.2d 815, 819 (Tenn.App.1989).

To commence the analysis we turn to § 188 and § 193 of the *Restatement (Second) of Conflict of Laws*, both of which have been adopted by Missouri. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co.*, 716 S.W.2d 348, 358 (Mo. App. W.D.1986). Auto–Owners concedes that the nature of this matter, an action on an automobile liability insurance contract, requires that the choice of law analysis begin with § 193.

While both § 188 and § 193 are contained in Chapter 8 of the *Restatement* entitled "Contract," § 188, "Law Governing the Absence of Effective Choice by the Parties," is located in Title A, the "General Principles" portion of the chapter. Section 193, "Contracts of Fire, Surety or Casualty Insurance," is located in Title B, which addresses "particular contracts."

■ Section 193 provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in 6. . . . [5]

Clearly, under § 193, Arkansas was the principal location of the insured risk of this particular automobile during the term of the policy. It was undisputed that Stoker added Honl to the company policy as the driver of the vehicle in question. Stoker furnished Auto–Owners with Honl's personal information and stated that the van to be issued to him would be garaged in Hot Springs, Arkansas, and primarily driven within a one-hundred-mile radius of that location. Further, Honl had an Arkansas drivers' license and 80–90 percent of the time the van was driven in Arkansas.

**4.** Arkansas adopted the initial-permission rule in 1988 in the case of *Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988). Ten years later, in *Liberty Mut. Ins. Co.*, the Arkansas Supreme Court noted that in *Commercial Union* "the 'liberal or initial-permission rule,' applied in the context of interpreting omnibus clauses in insurance policies . . . *permits recovery once the user of the vehicle has initially been given permission*, regardless of the manner in which the car is used thereafter. Significantly, once permission has been given, any deviation in operation is immaterial." *Liberty*, 333 Ark. 655, 971 S.W.2d 244, 247 (1998).

**5.** Section 6, *Choice of Law Principles*, states:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Auto–Owners focuses on the entire insurance policy rather than the policy for the individual vehicle, and contends that the exception to § 193 comes into play because the automobile insurance policy covered a fleet of vehicles which were mostly garaged in the state of Tennessee. Following this argument and relying on Comment b of § 193, Auto–Owners asserts that the exception to § 193 is dispositive because the question involves the generic issue of entitlement to coverage, rather than the specific issue of the location of the insured risk. Comment b to § 193 provides:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done and where the location of the risk has less significance, include ... where the policy covers a group of risks that are scattered throughout two or more states.

Thus, Auto–Owners argues, that the exception indicates that the provision regarding the insured risk cannot be given greater weight because the policy covered cars located in two or more states and we must turn to the more general choice of law principles found in § 188 to determine which individuals should be covered as insureds. Section 188 provides in part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in 6.

> (2) In the absence of an effective choice of law by the parties (*see* 187), the contacts to be taken into account in applying the principles of 6 to determine the law applicable to an issue include:

> (a) the place of contracting,

> (b) the place of negotiation of the contract,

> (c) the place of performance,

> (d) the location of the subject matter of the contract, and

> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Both parties cited *Hartzler v. Am. Family Mut. Ins. Co.*, 881 S.W.2d 653 (Mo.App. W.D.1994) in their arguments regarding the applicability of § 188 or § 193 to liability insurance contracts. In *Hartzler*, the Missouri Court of Appeals for the Western District dealt directly with the question of an automobile insurance contract. After noting that the risk in question was garaged in the State of Kansas, the court applied Kansas law. *Id.* at 655. Thus, in *Hartzler*, the court found the principal location of the insured risk to be the most important factor to be considered in determining the applicable law. *Id.* When faced with the decision of whether to use § 188 or § 193 to analyze the conflicts issue, the court held that the law governing insurance contracts is to be determined in accordance with the general principles set forth in § 188 only if "the principal location of the insured risk is not readily apparent." *Id.* at 656.

Auto–Owners argues that the question is simply which state's law should apply to the construction of this particular insurance contract including all the risks i.e., the majority of covered vehicles, rather than this specific insured risk. Auto–Owners points out that it is a Tennessee Corporation with Tennessee as its principal

place of business and that the contract was underwritten and issued in Tennessee. Auto–Owners contends the policy should obviously be interpreted according to Tennessee law since the insurance contract in question was negotiated, made and entered into in the state of Tennessee.

Auto–Owners does not cite to comment f of § 193 of the *Restatement,* a comment which we find to be particularly noteworthy. Comment f deals with multiple risk policies and notes that:

> A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and.... Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X.

In *Crown Center,* the Western District specifically found that an analysis of comment f was warranted in situations where, as here, one policy covered varied risks in several locations. 716 S.W.2d at 358–59. The court stated that the *Restatement* approach would treat each insured risk as though it were insured by a separate policy and would apply the law of the state where the risk was located. *Id.* Such an analysis makes sense as both a practical matter and as a policy matter. It would be unreasonable in every choice of law determination to analyze the casualty policy, mathematically determine where the majority of policies are issued by that company, and then follow that particular state's law. As the court in *Hartzler* later

found, the general principles set forth in § 188 apply over the specific principles found in comment a to § 193 only when "the principal location of the insured risk is not readily apparent." *Hartzler,* 881 S.W.2d at 656. Therefore, in this matter, the principal location of the risk, Honl's van, was Arkansas.

Additionally, Auto–Owners contends that when an action is brought by or against an individual or entity who is not a party to the insurance contract, the § 193 "most significant relationship test," rather than the principal location of the insured risk analysis, should be applied. Auto–Owners maintains that, pursuant to *Hartzler,* only the parties to the insurance contract are subject to the provisions of § 193, and cites *Gilmore v. Attebery,* 899 S.W.2d 164 (Mo.App. W.D.1995), in support of this argument.

*Gilmore,* however, is inapplicable to the matter at hand. *Gilmore* was a subrogation case in which the insurance company brought suit in its insureds' names to seek reimbursement for the money it had paid the named plaintiffs under its PIP coverage pursuant to the Kansas no-fault insurance system. In *Gilmore,* the motor-vehicle accident at issue occurred in Missouri, even though the named plaintiffs were residents of Kansas and the defendant tortfeasor lived in Illinois. Additionally, the contract of insurance had been purchased in Kansas through a Kansas agent and, the car was garaged in Kansas. While it was permissible under Kansas law for plaintiffs to assign their claims to their insurance company, under Missouri law this assignment would be against public policy and would be declared void. Therefore, the issue was whether the substantive law of Missouri or Kansas governed the claim. Despite the extensive contacts with Kansas, the Missouri court held that the law of the state where the collision occurred

would be applied to determine the rights of the parties. The *Gilmore* court did not analyze the case under a contract provision at all, but analyzed it under § 145(2) of the *Restatement,* a section that deals predominately with tort actions because it was an assignment of a personal injury claim. *Id.* at 167.

Additionally, Auto–Owners maintains that the issue of coverage is unrelated to the "insured risk." We disagree. The issue of coverage is at the core of almost every insurance policy dispute. In this case, Auto–Owners insured an automobile with full knowledge that it was garaged in the State of Arkansas and would be driven in the State of Arkansas by an Arkansas driver. When an accident occurred in Arkansas, the liability suit for damages was brought there, defended by Auto–Owners, and decided in the State of Arkansas applying Arkansas law. We find no error in the trial court's determination that Arkansas law applies to the issue of whether Klein was a permissive user of the vehicle in question. Point I is denied.[6]

In its second point, Auto–Owners claims the trial court erred in finding that Klein was a permissive user under the Arkansas "initial permission rule," because this rule does not extend permission to a third permittee. Although Auto Owners spends the first portion of its argument detailing Tennessee law, the thrust of this point centers on whether Klein would be a covered driver under Arkansas law. Both parties admit that there is not an Arkansas case directly on point. As such, this court must ascertain how it believes the Arkansas Supreme Court would answer the question presented and so rule. *See Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.,* 943 S.W.2d 711 (Mo.App. W.D.1997).

In making this judgment, this court looks to prior decisions of the Arkansas Supreme Court, Arkansas statutes, and authority from other jurisdictions concerning the issue, especially those previously cited with approval by the Arkansas Supreme Court. *D.L.C. v. Walsh,* 908 S.W.2d 791, 797–800 (Mo.App. W.D.1995)

In *Commercial Union Ins. Co. v. Johnson,* 294 Ark. 444, 745 S.W.2d 589 (1988), the seminal case on this point, the Arkansas Supreme Court recognized and adopted the initial permission rule. The initial permission rule has been defined as follows: "if permission to use the automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used." *Id.* at 591 (quoting *Arndt v. Davis,* 183 Neb. 726, 163 N.W.2d 886, 888 (1969)). In adopting the initial permission rule, the Arkansas Supreme Court quoted the discussion of J. Appleman in his treatise *Insurance Law and Practice* with approval:

> [Those] states [adopting the initial permission rule] have arbitrarily adopted a doctrine that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. This rule is also, albeit less colorfully, known as the initial permission rule.

*Commercial Union,* 745 S.W.2d at 592 (quoting 6C J. Appleman *Insurance Law and Practice* § 4366 (1977)).

---

**6.** In Point I, Auto–Owners made the additional argument that the Supreme Court of Arkansas has not specifically adopted a second permissive user doctrine. That argument is the thrust of Auto–Owners Point II, and will be addressed in that portion of the opinion.

While *Commercial Union* not specifically addressing the "second permittee" or "third permittee" situation found in the case at bar, the Arkansas Supreme Court did state:

> The cases adopting the "initial permission" rule usually provide that it governs "short of theft or conversion." [citations omitted]. Although the question is not before us now, we agree that an insurer should not be liable to a thief or a person who has no permission to use a vehicle and who converts it to his or her own use. With respect to the situation in which one who has permission of the named insured grants permission to another person to use the named insured's vehicle, we make no decision.... Some of the policy reasons for adopting the "initial permission" rule probably apply in the "second permittee" case to the same extent that they apply no matter how greatly the person having permission of the named insured may deviate from the permitted route or use, but we leave that question open.

*Id.* at 594.

Additionally, in *Liberty Mut. Ins. Co. v. Thomas*, 333 Ark. 655, 971 S.W.2d 244, 247 (1998), the Arkansas Supreme Court found the insurer liable even though the driver violated a written policy against using alcohol while operating the vehicle. The Arkansas court held that "any deviation from the permitted use is immaterial," and affirmed its commitment to *Commercial Union* despite the appellant's invitation to distinguish *Commercial Union* or not consider it at all. *Id.* Therefore, *Liberty* can be seen as a further expansion of the initial permission rule.

Before adopting the initial permission rule, the Arkansas Supreme Court analyzed the policies underlying the rule, as well as the "strict rule" and the "minor deviation rule." While its primary justification for the ultimate adoption of the initial permission rule was the public policy of protecting Arkansas citizens and others from uninsured drivers, the court found the reasons expressed in *Milbank Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 332 N.W.2d 160 (Minn.1983), gave further support to its decision.

In *Milbank*, the Minnesota Supreme Court stated that the rule "guarantees fulfillment of the state's policy of compensating innocent accident victims from financial disaster. Courts also have recognized that application will discourage collusion between bailor and bailee in order to escape liability; and courts have noted that [it] will greatly reduce a most costly and wasteful type of litigation." *Commercial Union*, 745 S.W.2d at 593 (quoting *Milbank*, 332 N.W.2d at 166.) In adopting the rule, the Arkansas court further pointed to the rationale of the Illinois court in adopting the initial permission rule, that "[a] liability insurance policy is for the benefit of the public as well as for the benefit of the named insured and that it is undesirable to permit litigation as to the details of the permission and use." *Commercial Union*, 745 S.W.2d at 594 (quoting *Visintin v. Country Mut. Ins. Co.*, 78 Ill.App.2d 75, 222 N.E.2d 550 (1966)).

As an additional reason for adopting the initial permission rule, the Arkansas Supreme Court cited a Nevada case in which the Nevada Supreme Court stated that it was adopting the rule in order to "effectuate the legislative policy of proving certain and maximum coverage." *Commercial Union*, 745 S.W.2d at 592 (quoting *United States Fid. & Guar. Co. v. Fisher*, 88 Nev. 155, 494 P.2d 549, 552 (1972)). This rationale has been codified in the Arkansas Motor Vehicle Safety Responsibility Act where the Arkansas General Assembly stated, in pertinent part:

The owner's policy of liability insurance shall ... (2) insure the person named therein and any other person, as insured, using any vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ... use of the vehicle[.]

Ark.Code § 27–19–713(b)(1987). The above statute, coupled with the adoption of the initial permission rule, leads this court to believe that Arkansas has a strong desire to give motorists who use its roads and highways broad protection in the event they are injured in a motor vehicle accident. Arkansas law fails to state, and we fail to find, that it makes any difference that the injured party was not a citizen of Arkansas. This extended safeguard for persons wrongfully injured on the roads of Arkansas is an effort to protect the interests of victims and to insure that there will be financially responsible persons available from whom they may seek damages. Here, Mrs. Honl was given express permission by Honl to drive and she, in turn, asked Klein to drive.[7] Under Arkansas law, Klein was a permissive user of the minivan. Therefore, we find that the trial court's interpretation of Arkansas law was not in error. Point II is denied.

In order to fully address Auto–Owners' third point, a discussion of the procedural background to this case is necessary. Following the death of Patrick A. Duncan, Edna Byers filed a wrongful death action in the United States District Court for the Western District of Arkansas against Klein, who was defended by Auto–Owners with a reservation of rights. On October 31, 2001, Byers received a favorable judgment in that court. Prior to judgment being entered in the wrongful death action, Auto–Owners brought a declaratory judgment action in the Chancery Court for Weakley County, Tennessee, seeking a declaration as to its rights and obligations to Klein by virtue of its contract of automobile liability insurance issued to Stoker. Service was obtained on Byers.

On March 23, 2001, attorneys Clifton M. Smart, III, and Michael L. Johnson[8] filed a petition to be admitted *pro hac vice* to the Chancery Court of Tennessee, along with a motion and suggestions to dismiss the Tennessee declaratory judgment action. They argued that Byers did not have minimum contacts with the state of Tennessee sufficient to subject her to *in personam* jurisdiction, and that the doctrine of *forum non conveniens* was applicable. The petition, motion, and suggestions were also signed by Anthony Deal, an attorney from Memphis, Tennessee. Auto–Owners disputed the allegations in the Motion to Dismiss, contending that Byers had sufficient contacts with the State of Tennessee by virtue of her contact, communication, and claim for money damages against a Tennessee insurer within the State of Tennessee.

The Tennessee court never ruled on the Motion to Dismiss; however, Auto–Owners filed a Motion for Summary Judgment (which did not address the issue of *in*

---

7. Here, Auto–Owners makes much of Stoker's written requirement that the cars issued to its employees were not to be driven for personal reasons or by any other person. However, Auto–Owners admits that it did not have any knowledge of those policies and, more importantly, concedes this fact did not affect its pricing or the granting of coverage to Stoker. According to Arkansas law, the violation of the written policy of Stoker is immaterial to a determination of whether or not Klein was a permissive user. *See Liberty*, 333 Ark. 655, 971 S.W.2d 244 (1998).

8. Both Mr. Smart and Mr. Johnson were listed as Byers' attorneys of record in the wrongful death action.

*personam* jurisdiction over Byers) in the Tennessee court. Notice of the summary judgment motion was given to the Tennessee attorney, Mr. Deal, but not to the Missouri attorneys, Mr. Smart and Mr. Johnson. Byers did not defend the action, and the Tennessee Chancey Court entered summary judgment in favor of Auto–Owners after first finding that Auto–Owners did not have a duty to defend Klein or pay any judgment on his behalf because he was not considered an insured under the policy they issued. Significantly, the summary judgment did not address whether the Tennessee court had *in personam* jurisdiction over Byers.

The Missouri trial court found that the Tennessee court failed to rule on the issue of *in personam* jurisdiction of Byers and, therefore, she was free to raise that issue in the Missouri court as the Tennessee summary judgment was not entitled to full faith and credit as to Byers. It is from that ruling that Auto–Owners third point stems. Auto–Owners' third point on appeal is that the Missouri trial court erred failing to find that, under the principles of *res judicata* or collateral estoppel, the Tennessee judgment was dispositive as to the Missouri equitable garnishment action.

Without citation to any authority, the premise of Auto Owners' third point is that Byers had an obligation to bring her Motion to Dismiss to the attention of the Tennessee court for ruling at some point prior to that court's entry of summary judgment, and that her failure to do so warrants a finding that the trial court denied her motion by implication. Auto–Owners does not address whether it had any obligation to bring to the court's attention the motion or whether *in personam* jurisdiction may be obtained in the State of Tennessee in a ruling by implication. Auto–Owners argues that Byers could have ignored the proceedings in the State

of Tennessee altogether with a claim of no personal jurisdiction, but that once she raised the issue in her pleading she had an obligation to obtain from the Tennessee court a ruling on her motion.

■■■ In examining the issue of *in personam* jurisdiction over Byers, we must determine whether or not she was an indispensable party to the Tennessee action. The nature of declaratory relief requires that "every person having an affected interest [in an action] be given notice and an opportunity to be heard before declaratory relief may be granted." *Huntsville Util. Dist. v. General Trust Co.*, 839 S.W.2d 397, 403 (Tenn.App.1992). Further, the Tennessee Code provides that: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." Tenn.Code Ann. § 29–14–107(a) (Repl.2000). Here, there is no question that Byers is a necessary party to the declaratory judgment action brought by Auto–Owners in the State of Tennessee. Any judgment stemming from the outcome of the matter would irrevocably affect and possibly prejudice her rights relating to her previous wrongful death claim. Therefore, the dispositive question is whether the Tennessee court assumed personal jurisdiction over Byers in its summary judgment ruling in favor of Auto–Owners.

■■■ Contrary to Auto–Owners' assertion that Byers should have obtained a ruling on her Motion to Dismiss, according to Tennessee law, it was Auto–Owners who bore the burden of establishing that the Tennessee court had jurisdiction. It is "[t]he plaintiff in an action [who] bears the burden of establishing a *prima facie* case that exercising personal jurisdiction over the defendant is proper." *Manufacturers*

*Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d· 846, 854 (Tenn.App.2000). "If the defendant challenges the trial court's personal jurisdiction over him by filing a properly supported motion to dismiss, 'the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.* at 854–855 (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991)). In this case, not only did Auto–Owners fail to prove that the Tennessee court had jurisdiction over Byers, but it also failed to request that the court explore the matter further by requesting a hearing or presenting additional evidence.[9]

Likewise, Auto–Owners' contention that the Motion to Dismiss was overruled by implication has no merit. As noted, Auto–Owners failed to cite any cases for the proposition that a motion to dismiss for lack of *in personam* jurisdiction can be implicitly overruled in a summary judgment motion that incorporates no affidavits and makes no findings on that issue. We have found no Tennessee cases that stand for this proposition. Here, Byers' Motion to Dismiss was not implicitly or explicitly overruled by the Tennessee court; it was simply never considered.

■■■ Auto–Owners argues that through the application of the Tennessee long arm statute, Tenn.Code Ann. § 20–2–214, Tennessee had personal jurisdiction over Byers. In determining whether a state can assert long-arm jurisdiction, due process requires that a non-resident defendant be subjected to a judgment *in personam* only if she has "such minimum contacts with the foreign state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *J.I. Case Corp. v. Williams,* 832 S.W.2d 530, 531–532 (Tenn.1992)(citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In determining whether the requisite minimum contacts are present, Tennessee courts consider "three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts." *Shelby Mut. Ins. Co. v. Moore,* 645 S.W.2d 242, 246 (Tenn.App.1981)(quoting *Aftanase v. Econ. Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965)). Two lesser factors to be considered are the interest of the forum state and convenience. *Id.* The only facts cited by Auto–Owners in support of its position that the Tennessee court had jurisdiction was that Byers made a claim under its liability insurance policy by contacting a claims adjuster located in Tennessee. Her actions did not establish a continuing business relationship with Auto–Owners, and Byers had no reason to believe that her contact with them would have substantial consequences within the State of Tennessee. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(citing *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)). Subjecting Byers to the jurisdiction of Tennessee courts would compel her to defend herself in a state with which she has no relevant connection. She did not specifically seek to file a claim in the state of Tennessee; instead she merely sought

---

**9.** The rule in Missouri is similar. Under Missouri case law and pursuant to the Missouri Long Arm Act, § 506.500, the burden shifts to the plaintiff to make a *prima facie* showing that the trial court has personal jurisdiction by demonstrating: (1) that the action arose out of an activity covered by the long-arm statute, and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process. *See Mello v. Giliberto,* 73 S.W.3d 669, 676 (Mo.App. E.D.2002).

to file a claim with Auto–Owners, who incidentally had offices in Tennessee. Byers did not "purposefully, avail [herself] of the privilege of conducting activities within [Tennessee], thus invoking the benefits and protections of its laws," and it would be unreasonable for her to be forced to defend a lawsuit in that state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing *Int'l. Shoe,* 326 U.S. at 319, 66 S.Ct. 154). We find as a matter of law, that the contact in this matter was clearly insufficient as a matter of law to support personal jurisdiction in the State of Tennessee.

Based on the Full Faith and Credit Clause of the United States Constitution, state courts must accord full faith and credit to the valid judgments of other states. *Doctor's Associates, Inc. v. Duree,* 30 S.W.3d 884, 887 (Mo.App. E.D.2000). Moreover, judgments of a sister state are presumed valid. *Id.* Further, Missouri courts are obligated to give a judgment of a sister state full faith and credit unless that judgment is void for lack of personal jurisdiction or subject matter jurisdiction, or has been obtained by fraud. *Schumacher Elevator Co. Inc. v. Springfield Elevator Co. Inc.,* 804 S.W.2d 42, 45 (Mo. App. S.D.1991). A judgment entered against a party by a court that lacks *in personam* jurisdiction over that party is void. *K & K Investments Inc. v. McCoy,* 875 S.W.2d 593, 596 (Mo.App. E.D.1994).

The Tennessee court lacked *in personam* jurisdiction over Byers when it entered a judgment against her. Therefore, it follows that without personal jurisdiction over her, there was not a binding Tennessee judgment to enforce against her in Missouri. The judgment was void as to Byers. The trial court did not err in its finding that the Tennessee court did not address the issue of jurisdiction over Byers, that there was no binding judgment entitled to full faith and credit against Byers, and that she was free to bring suit for equitable garnishment in Missouri. Point III is denied.

The judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.