SOUTHERN FARM BUREAU CASUALTY
INSURANCE CO. *v.* Terry EASTER, Roy Johnson,
Rhonda Johnson, and Ronald Andrew Taylor

287 S.W.3d 537

08-358

Supreme Court of Arkansas
Opinion delivered September 18, 2008

[Rehearing denied October 23, 2008.]

*Davis, Wright, Clark, Butt & Carithers, PLC,* by: *Constance G. Clark* and *Don A. Taylor,* for appellant/cross-appellee.

*Osborne & Baker,* by: *Barry D. Baker,* for appellees/cross-appellants Roy and Rhonda Johnson.

*Roy, Lambert & Lovelace,* by: *James H. Bingaman,* for appellee Ronald Andrew Taylor.

ROBERT L. BROWN, Justice.   Appellant Southern Farm Bureau Casualty Insurance Company (Farm Bureau) appeals summary judgments in favor of the appellees, which held that a certain exclusion in the Farm Bureau insurance policy was void as against public policy. Cross-appellants Roy Johnson and Rhonda Johnson cross-appeal the trial court's denial of their petition for attorneys' fees, twelve percent interest, and prejudgment interest. We reverse the trial court's summary judgments with respect to the policy exclusion and remand the case for an order consistent with this opinion. The cross-appeal is moot.

On November 12, 1998, appellee Terry Easter squealed his tires in a shopping center parking lot and caught the attention of a nearby Rogers police officer in a marked patrol car. The officer attempted to pull Easter over after he determined that Easter was driving over the speed limit. Easter did not pull over and ultimately collided with another car following a high speed chase with police officers. Appellees Roy and Rhonda Johnson, passengers in Easter's vehicle, and appellee Ronald Taylor, the driver of the other car, were injured. Following the collision, Easter was arrested and charged with reckless driving, fictitious vehicle tags, no proof of insurance, felony fleeing, driving while intoxicated, and disobeying a stop sign. In December 1998, the Johnsons and Taylor filed personal injury lawsuits against Easter.

On April 9, 1999, Easter's insurance company, Farm Bureau, filed a declaratory action in which it sought a determination from the trial court that it did not have a duty to defend the

lawsuits or to pay any judgment rendered against Easter under his motor vehicle liability policy. Farm Bureau relied on an exclusion in the policy that it would not pay for bodily injury or property damage "while you or anyone using your auto, with your permission, is involved in the commission of a felony; or while seeking to elude lawful apprehension or arrest by any law enforcement official" (hereinafter "eluding-lawful-arrest exclusion"). Farm Bureau urged in its petition that the eluding-lawful-arrest exclusion applied and absolved it of any obligation to defend Easter's claim.

The Johnsons and Taylor next filed separate motions for summary judgment in which they contended that the eluding-lawful-arrest exclusion was void as against public policy. The trial court granted these motions and held that the eluding-lawful-arrest exclusion in Easter's policy violated public policy "as codified in the mandatory liability insurance and no-fault provisions of Arkansas Law." Farm Bureau appealed. This court reversed the trial court's decision and remanded the case because we found that a genuine issue of material fact remained regarding whether Easter was "seeking to elude lawful apprehension or arrest." *S. Farm Bureau Cas. Ins. Co. v. Easter*, 345 Ark. 273, 277-78, 45 S.W.3d 380, 383 (2001) (*Easter I*). Following his arrest, Easter pled no contest to the charges and was sentenced to seven days in jail and six months' probation.

After *Easter I*, Farm Bureau filed an amended complaint for declaratory judgment, which included a prayer that there was no duty to pay punitive damages. The Johnsons filed an answer and asserted a counterclaim in which they argued that Farm Bureau was obligated to pay medical expenses and disability income benefits (hereinafter personal injury protection "PIP benefits") to them, pursuant to Easter's policy.[1] Farm Bureau answered the counterclaim and argued that the eluding-lawful-arrest exclusion also applied to medical injuries and disability benefits and absolved it of any liability to pay PIP benefits. In November 2005, a jury trial was held, and the jury found that Easter was seeking to elude lawful apprehension or arrest at the time of the accident. Following that, the circuit judge granted the Johnsons' and Taylor's renewed motions for summary judgment with respect to Farm

---

[1] Taylor did not file a similar counterclaim, presumably because the policy did not cover medical expenses for those injured in another car.

Bureau's amended complaint and held that the exclusion relied upon by Farm Bureau was void as against public policy.

Farm Bureau again appealed to this court. This court could not reach the merits of the appeal, however, because the trial court failed to enter an order with regard to the Johnsons' counterclaim. *S. Farm Bureau Cas. Ins. Co. v. Easter*, 369 Ark. 101, 104, 251 S.W.3d 251, 253 (2007) (*Easter II*). The appeal was dismissed without prejudice pursuant to Rule 54(b) of the Arkansas Rules of Civil procedure. *Id.*, 251 S.W.3d at 253.

After the second appeal was dismissed, the Johnsons moved for summary judgment on their counterclaim. Farm Bureau responded and filed a cross-motion for summary judgment. The circuit court concluded that Farm Bureau could not rely on the eluding-lawful-arrest exclusion to deny PIP benefits to the Johnsons and granted the Johnsons' summary-judgment motion. The court also held that the Johnsons were not entitled to recover a twelve percent penalty, prejudgment interest, or attorneys' fees and denied that prayer for relief because the court found that Farm Bureau did not lack good faith. The trial court further ruled that Farm Bureau's request regarding punitive damages was not ripe for determination and that a ruling on the matter would be advisory. This claim was dismissed without prejudice.[2]

Farm Bureau then filed the present notice of appeal, challenging the trial court's rulings with regard to the eluding-lawful-arrest exclusion. The Johnsons filed a notice of cross-appeal with respect to the circuit court's denial of attorneys' fees, prejudgment interest, and a twelve percent penalty.

Farm Bureau's appeal relates to whether the trial court properly interpreted relevant Arkansas statutes in granting summary judgment in favor of the appellees. The dispute between the parties centers on public policy as codified in the Arkansas statutes related to automobile liability insurance. The laws in question set out the minimum no-fault coverage that all automobile liability insurance policies must provide (hereinafter "no-fault law"), and also require that all motor vehicles be covered by a certificate of liability insurance (hereinafter "compulsory insurance law").

Arkansas' no-fault law was first enacted in 1973. Act 138 of 1973 is now codified at Arkansas Code Annotated sections 23-89-

---

[2] We view this decision of the trial court as correct in this declaratory-judgment action as any ruling on such damages at this juncture would be premature.

201 to -208 (Repl. 2004 & Supp. 2007). The law mandates that all automobile liability insurance policies "provide minimum medical and hospital benefits, income disability, and accidental death benefits . . . without regard to fault." Ark. Code Ann. § 23-89-202(a) (Repl. 2004). Appellees urge this court to affirm the trial court and hold that an insurance company may not deny third-party PIP benefits despite an exclusionary provision in the policy that would otherwise control because to do so would contravene the mandate of the statute.

In 1987, the Arkansas General Assembly passed the compulsory insurance law, which requires all motor vehicles to be covered by a liability insurance policy. Act 442 of 1987, that law, as amended, is now codified at Arkansas Code Annotated sections 27-22-101 to -107 (Repl. 2008). The compulsory insurance law also requires that each liability policy include a minimum amount of coverage. Ark. Code Ann. § 27-22-104 (Repl. 2008). The trial court held, and the appellees now assert, that these provisions of the Code make the eluding-lawful-arrest exclusion invalid as against public policy.

We note at the outset that "the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable errors." *Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 85, 40 S.W.3d 254, 257 (2001). Furthermore, this court has said that "a state's public policy is best evidenced by its statutes and an insurance provision that is in accordance with a statute cannot run contrary to public policy." *Id.*, 40 S.W.3d at 257.

Farm Bureau first claims on appeal that the trial judge erred in finding the eluding-lawful-arrest exclusion void as against public policy under our compulsory insurance law. With respect to compulsory insurance, the General Assembly has expressly provided that this law is "not intended in any way to alter or affect the validity of any policy provisions, exclusions, exceptions, or limitations contained in a motor vehicle insurance policy required by this chapter." Ark. Code Ann. § 27-22-101(a) (Repl. 2008). This court has long held that the legislature's intent in this provision is clear. *See, e.g., Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 212, 937 S.W.2d 180, 183 (1997) ("[O]ur legislature has specifically provided that the compulsory insurance law was not intended to affect the validity of any policy exclusions.").

As a result, this court has affirmed various policy exclusions in a long line of cases irrespective of our compulsory insurance law.

*See, e.g., Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004) (affirming a named-driver exclusion that operated to deny benefits to the injured policyholder); *see also Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001) (affirming a named-driver exclusion where the policyholder himself was the excluded driver); *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997) (affirming a named-driver exclusion where the injured party was an innocent third-party pedestrian); *Cook v. Wausau Underwriters Ins. Co.*, 299 Ark. 520, 772 S.W.2d 614 (1989) (affirming a provision excluding coverage to the spouse of the policyholder).

Appellees do not disagree that this court has often upheld certain exclusions in liability insurance policies. Instead, they assert that these cases do not control in the instant case because the exclusion presently at issue is materially different than those this court has previously affirmed. They argue that a named-driver exclusion is not really an exclusion because the insurance policy is never actually issued to the excluded driver. They also assert that named-driver exclusions are different because the insured acknowledges that there will be no coverage for damages caused when the excluded driver operates the vehicle.

We find the appellees' distinctions unpersuasive. As an initial matter, section 27-22-101(a), which approves exclusions, does not state that only certain exclusions are permitted by public policy, while others are not. Rather, it reads that statutes are not intended *in any way* to alter *any* policy exclusions. Moreover, in the instant case, as with named-driver exclusions, the insurance company and the policyholder set the parameters of risk covered by the policy. This court has said that "an insurer may contract with its insured upon whatever terms the parties may agree upon which are not contrary to statute or public policy." *Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 412, 867 S.W.2d 457, 458 (1993).

Appellees further contend that unless this court affirms the trial court and holds that the eluding-lawful-arrest exclusion violates public policy, the statute's provisions regarding minimum coverage will not have any effect. According to appellees, excluding accidents caused when a policyholder seeks to evade lawful arrest by allowing the exclusionary provision to stand under section 27-22-101(a) would be inconsistent with the compulsory insurance law set out in section 27-22-104.

Appellees, however, misconstrue the meaning of section 27-22-101(a) and this court's precedent regarding its construction. While the compulsory insurance law requires an automobile liability insurance policy to include certain minimum amounts of coverage, it does not require the policy to insure against all kinds of risk. *See Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 83, 40 S.W.3d 254, 255 (2001) (named-driver exclusions included in insurance policies in order that "coverage may be maintained on the vehicle to be driven by operators with an acceptable level of risk"). Stated differently, a policy cannot cover certain types of automobile accidents but provide less coverage than the minimum required by statute. Nevertheless, section 27-22-104 does not require that every liability insurance policy cover every type of automobile accident. Indeed, section 27-22-101(a) expressly states that *any* exclusions, exceptions, or limitations are permitted.

Appellees place great emphasis on the importance of protecting innocent third parties who are injured in automobile accidents. While this may be a laudable goal, it cannot contradict the stated intent of the legislature. In addition, while an important policy behind the compulsory insurance law is to decrease the financial catastrophe to others involved in accidents with motorists lacking adequate insurance coverage, it is not the only policy consideration implicated in the instant case. There is a countervailing public policy against compulsory liability insurance for the acts of an intentional wrongdoer. 16 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 116.3 (2000).

As a final point, appellees direct this court to various cases from other jurisdictions holding that exclusionary insurance provisions like the one in the instant case are invalid as against public policy. This court, however, correctly addressed this point in *Smith v. Shelter Mutual Insurance Company*:

> Because our legislature has specifically provided that the compulsory insurance law was not intended to affect the validity of any policy exclusions, it is unnecessary for us to address cases from other jurisdictions that rely on their own states' statutes. We feel certain that, if the legislature wishes to provide that the compulsory insurance law is to affect the validity of any policy exclusions, it will change or amend § 27-22-101(a).

327 Ark. 208, 212, 937 S.W.2d 180, 183 (1997).

■ Regardless of this pronouncement and despite this court's repeated reliance on the statement of intent in section

27-22-101(a) that policy exclusions are consistent with the compulsory insurance law, the General Assembly has not amended section 27-22-101(a) since its enactment in 1987.[3] This court has often observed that "it may be construed as acquiescence to our construction of the statute," when the General Assembly fails to act in response to a certain construction. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Henderson*, 356 Ark. 335, 341, 150 S.W.3d 276, 279 (2004). We continue to conclude that the legislature's intent is clear as stated in section 27-22-101(a), and that the compulsory insurance law of the Arkansas Code is "not intended *in any way* to alter or affect the validity of *any* policy provisions, exclusions, exceptions, or limitations" of automobile insurance policies. (Emphasis added.) We hold that the trial court erred in granting the appellees' motions for summary judgment on grounds that the eluding-lawful-arrest exclusion violated public policy as set forth in our compulsory insurance law. We reverse and remand on this point.

Farm Bureau's second point on appeal is analogous to its first. The trial court also granted partial summary judgment for the appellees, Roy and Rhonda Johnson, holding that Farm Bureau could not rely on the eluding-lawful-arrest exclusion to deny them PIP benefits under our no-fault law. *See* Ark. Code Ann. §§ 23-89-201 to -208 (Repl. 2008). Farm Bureau asserts that the trial court erred because the Arkansas Code authorizes an insurance policyholder to reject certain covered benefits and also expressly permits insurers to exclude benefits when the insured causes injury while eluding apprehension or arrest.

The Arkansas no-fault law sets out the required minimum benefits that automobile liability insurance policies must include for medical and hospital benefits, income disability benefits, and accidental health benefits. Ark. Code Ann. § 23-89-202 (Repl. 2008). These minimum benefits must extend to the named insured as well as to other enumerated third parties irrespective of the insured's fault. *Id.* Despite these minimum requirements, the Code also explicitly reads that "the named insured shall have the right to

---

[3] Section 27-22-104, on the other hand, has been amended six times since 1987, the most recent being in 2007. *See* Act of Apr. 8, 1991, No. 988, 1991 Ark. Acts 3029; Act of Mar. 3, 1993, No. 357 1993 Ark. Acts 785; Act of Apr. 1, 1997, No. 991, 1997 Ark. Acts 5363; Act of Apr. 15, 1999, No. 1527, 1999 Ark. Acts 6572; Act of Apr. 13, 2005, No. 2246, 2005 Ark. Acts 9600; Act of Mar. 26, 2007, No. 485, 2007 Ark. Acts 2428.

reject, in writing, all or any one (1) or more of the coverages enumerated in § 23-89-202." *Id.* § 23-89-203(a). Section 23-89-205 is even more instructive for purposes of the instant case, as it provides:

> An insurer may exclude benefits to any insured, or to his or her personal representative, under a policy required by § 23-89-202, when the insured's conduct contributed to the injury he or she sustained in any of the following ways:
>
> (1) Causing injury to himself or herself intentionally; or
>
> (2) Causing injury while in the commission of a felony or while seeking to elude lawful apprehension or arrest by a law enforcement official.

*Id.* § 23-89-205. Taken together, these statutes provide the mandatory offering of no-fault coverage accompanied by the right to reject or exclude such coverage in whole or in part. In sum, section 23-89-202 is the starting point for our no-fault law, but the insurer and the insured are permitted by law to change the coverage, which, of course, is what they agreed to do in the case before us.

The appellees concede that an insurer may exclude PIP benefits for injuries sustained by the policyholder if those injuries were received while the policyholder was eluding lawful apprehension or arrest under section 23-89-205. They maintain, however, that it is against public policy to prevent innocent third parties from recovering PIP benefits in such a case. But as this court pointed out in *Aetna Insurance Company v. Smith*, section 23-89-205 "specifically permits an insurer to eliminate risks attributable to intentional misconduct of the insured." 263 Ark. 849, 853, 568 S.W.2d 11, 13 (1978) (construing Ark. Stat. Ann. § 66-4017, the antecedent to Ark. Code Ann. § 23-89-205). It is also instructive that section 23-89-205 does not specifically provide protection for injuries to innocent third parties while the Insurance Code does so in the subchapter immediately following. *See* Ark. Code Ann. § 23-89-303(d)(1) (Repl. 2008) (expressly preventing an insurance company from rescinding coverage based on misrepresentations or fraud when the insured's negligence causes injury to a third party). We note, as a final point, that this court has affirmed a named-driver exclusion when the injured party was an innocent child. *See Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997).

■ Because this court has previously construed section 23-89-205 to allow an insurer to avoid risks caused by the intentional misconduct of the insured and because the General Assembly has failed to require no-fault coverage for injuries suffered by innocent third parties in such circumstances, the trial court also erred in ordering Farm Bureau to pay the appellees PIP benefits under this state's no-fault law. We reverse and remand on this point as well.

Because we reverse and remand on the first two points, it is unnecessary for this court to address the Johnsons' cross-appeal relating to their claim for attorneys' fees, a twelve percent penalty, and prejudgment interest.

Reversed and remanded. Cross-appeal moot.

GLAZE, J., not participating.