Cite as 2026 Ark. App. 192

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-24-853

| | |
|---|---|
| MARCO SOTO-ABARCA<br><br>APPELLANT<br><br>V.<br><br>TREXIS INSURANCE CO.<br><br>APPELLEE | Opinion Delivered March 18, 2026<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-23-867]<br><br>HONORABLE BETH STOREY BRYAN, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

This appeal asks this court to determine, as a matter of first impression,[1] whether a provision in an automobile insurance policy excluding coverage for unlicensed drivers is void as against public policy. Marco Soto-Abarca (Abarca) appeals the order of the Washington County Circuit Court granting the motion for summary judgment filed by appellee Trexis Insurance Company ("Trexis") finding that the exclusion did not violate public policy.

The underlying facts of this case are fairly straightforward and undisputed. Trexis issued an Arkansas personal automobile insurance policy to Arturo Martinez-Araujo (Araujo). The policy language included several exclusions to claims presented under the

---

[1]This court attempted to certify this appeal to the supreme court, citing Arkansas Supreme Court Rule 1-2(c)(1), (4), and (5); however, certification was denied on February 19, 2026.

policy. At issue in this case is the exclusion declaring that Trexis does not provide liability coverage for the following:

> 7. "Bodily injury" or "property damage" caused by or in any way arising out of the operation, maintenance, or use of a vehicle by a:
>
> . . . .
>
> c. Person who does not possess a valid, in-force operator's license,
>
> . . . .
>
> > unless that person is listed as a driver or resident on the application or endorsed onto the "Declarations" during the policy term but before the loss. This exclusion applies regardless of the theory of liability.

Araujo gave Julian Trejo permission to drive his car, a 2005 Honda Civic. Trejo did not possess a valid driver's license at the time. On December 2, 2022, Trejo was involved in a motor-vehicle accident with a car driven by Abarca. Abarca's vehicle was insured under a policy issued by Traders Insurance Co. ("Traders"); that policy provided uninsured-motorist coverage to Abarca.

Abarca subsequently sued Trejo in the Washington County Circuit Court. Trexis, as the insurer of the vehicle involved in the accident, filed an answer on Trejo's behalf. Trexis then filed a complaint for declaratory judgment against Araujo, Abarca, Trejo, and Traders asking the circuit court to declare it had no duty to defend or indemnify Trejo because he was not a covered person under the insurance policy as a result of the unlicensed-driver exclusion.

After conducting discovery, Trexis moved for summary judgment on its declaratory-judgment action, arguing that the insurance policy it issued to Araujo unambiguously excluded coverage for damages caused by the operation of the car by a person who does not possess a valid, in-force operator's license. Abarca responded to Trexis's motion, arguing that the unlicensed-driver exclusion was void as against public policy.

The circuit court held a hearing on Trexis's summary-judgment motion on September 19, 2024. After considering arguments of counsel, the court granted Trexis's motion, first finding that there were no genuine issues of material fact and that the exclusionary language was unambiguous. The court then considered Abarca's public-policy argument:

> The only other issue for the Court to decide is whether or not it violates public policy to exclude an unnamed driver who was––does not have a valid driver's license. The Court finds that it does not. The Court agrees with the plaintiff that it's the legislature, obviously, that determines public policy, and not the courts. The Court of Appeals and Appellate Courts in Arkansas have made that clear, and exclusionary clauses are to be enforced pursuant to their terms as long as there's no public policy that it violates. The Court agrees that in this case, again, with this limited exclusion, that it's unambiguous, the exclusion is valid and does not violate public policy.

A written order memorializing the court's summary-judgment ruling from the bench was entered on September 27, 2024, and Abarca timely appealed.

Summary judgment is to be granted by a circuit court when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Lewis v. Mid-Century Ins. Co.*, 362 Ark. 591, 210 S.W.3d 113 (2005). Where there are no disputed material facts, our review must focus on the circuit court's application of the law to those undisputed facts. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11

S.W.3d 531 (2000); *Hurst v. S. Farm Bureau Cas. Ins. Co.*, 2011 Ark. App. 657. Questions of law are reviewed de novo. *Patterson v. S. Farm Bureau Cas. Ins. Co.*, 2018 Ark. App. 179, 545 S.W.3d 253.

On appeal, Abarca argues that the circuit court erred in finding that Trexis's automobile-policy provision excluding coverage for an unlicensed driver does not violate the public policy of the State of Arkansas. We therefore begin our analysis by providing an overview of Arkansas's law regarding the construction of exclusionary endorsements in insurance-policy contracts. An insurer may contract with its insured upon whatever terms the parties may agree, which are not contrary to statute or public policy. *Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). Exclusionary endorsements must adhere to the general requirements that the insurance terms be expressed in clear and unambiguous language. *Hurst*, 2011 Ark. App. 657. Our longstanding general rule is that when the terms of an insurance policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001). This court has already declared the exact exclusionary language at issue in this case to be clear and unambiguous. *Hinojosa v. Trexis Ins. Co.*, 2023 Ark. App. 359, 673 S.W.3d 800. With that question settled, the issue for us to address in this case is whether the terms of the policy are contrary to statute or public policy.

Unless the legislature has specifically prohibited exclusions, courts will not find such restrictions void as against public policy. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 15,

4

75 S.W.3d 696, 699 (2002). We have repeatedly held that the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable errors. *State Farm Mut. Auto. Ins. Co. v. Henderson*, 356 Ark. 335, 342, 150 S.W.3d 276, 280 (2004). It is generally recognized that the public policy of a state is found in its constitution and statutes. *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988).

The crux of Abarca's argument on appeal is that the unlicensed-driver exclusion in Trexis's policy is void as against the public policy of the State of Arkansas because the General Assembly has mandated that motor-vehicle insurance policies "shall . . . insure the person named therein and any other person, as insured, using any vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles." Ark. Code Ann. § 27-19-713(b)(2) (Supp. 2025). He argues that because the requirement of insurance is primarily for the protection of victims of at-fault drivers, not the insured, then public policy should require that a permissive driver of an insured vehicle should be covered by insurance in order to protect the public. Otherwise, he contends, the burden of damages incurred in automobile accidents "are shifted to the innocent tort victim, or, if medical bills incurred go uncompensated, to the public at large."[2] Relying primarily on

_____

[2]Although Abarca does not cite Arkansas case law in support of this position in his opening brief, its general expression can be found in *Commercial Union Insurance Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988), wherein the supreme court, interpreting section 27-19-713(b), adopted the "initial permission" rule. This rule generally provides that

multiple cases from Louisiana--but none from Arkansas--Abarca argues that the exclusionary language in Trexis's policy is incompatible with the public policy that insurance policies are intended to protect the public generally and injured parties specifically. *See, e.g., Adams v. Thomas*, 729 So. 2d 1041 (La. 1999); *Searcy v. Auto. Cas. Ins. Co.*, 714 So.2d 1265 (La. Ct. App. 1998); *State Farm Mut. Auto. Ins. Co. v. Landry*, 688 So.2d 1125 (La. Ct. App. 1996).

We note, however, that Louisiana has expressly codified its public policy in its statutes: "The legislature finds that the purpose of all liability policies is to provide protection and coverage to all insureds, whether the insured is a named insured or an additional insured under the omnibus clause, for all legal liability that the insured may have within the terms and limits of the policy." La. R.S. 22:1269(F). Abarca does not point us to an analogous Arkansas statute.

Moreover, in determining whether an Arkansas statute prohibits an exclusion such as the unlicensed-motorist exclusion in this case, we are mindful of Arkansas Code Annotated section 27-22-101(a) (Repl. 2022), which expressly provides that the Motor Vehicle Liability Insurance Act "*is not intended* in any way *to alter or affect the validity of any* policy provisions, *exclusions*, exceptions, or limitations contained in a motor-vehicle

---

if permission to use an insured automobile was initially given, recovery may be had regardless of the manner in which the automobile was thereafter used. *Id.* at 447, 745 S.W.2d at 591. The court explained that the rule is "justif[ied] . . . on the ground that *it is good public policy to protect persons injured in automobile accidents against uninsured motorists.*" *Id.* at 448, 745 S.W.2d at 591 (emphasis added).

insurance policy required by this chapter." (Emphasis added.) Abarca acknowledges this statute in his reply brief but argues that the phrase "a motor vehicle insurance policy required by this chapter" "makes clear it only applies to Chapter 22 of Title 27," whereas his policy argument stems from Chapter 19 of Title 27.

These two provisions are indeed found in separate chapters of our insurance statutes: Chapter 22 is the Motor Vehicle Liability Insurance Act (MVLIA), and Chapter 19 is the Motor Vehicle Safety Responsibility Act (MVSRA). The supreme court, however, has held that the MVLIA "is supplemental to *and cumulative to*" the MVSRA. *Branscumb v. Freeman*, 360 Ark. 171, 176, 200 S.W.3d 411, 414–15 (2004) (emphasis added).

Given this language in *Branscumb*, we find the supreme court's holding in *Southern Farm Bureau Casualty Insurance Co. v. Easter*, 374 Ark. 238, 287 S.W.3d 537 (2008), to be instructive. In *Easter*, the court considered an exclusion in an insurance policy that precluded coverage "while you or anyone using your auto, with your permission, is involved in the commission of a felony or while seeking to elude lawful apprehension or arrest by any law enforcement official." *Id.* at 241, 287 S.W.3d at 539. Easter, a driver trying to avoid arrest, collided with another car. The passengers in the other car filed personal-injury lawsuits against the fleeing driver, Easter. Easter's insurance company, Farm Bureau, filed a declaratory-judgment action seeking a determination that it owed no coverage under the "eluding-lawful-arrest" exclusion. The injured passengers then moved for summary judgment, arguing that the exclusion violated public policy. The circuit court agreed with

the passengers and found that the exclusion was void under Arkansas's compulsory-insurance law, Arkansas Code Annotated section 27-22-104 (Supp. 2025).

The supreme court reversed. It first held that the compulsory-insurance law clearly stated that it was not intended to affect the validity of any exclusions in a liability policy. *Id.* at 243, 287 S.W.3d at 541. The court then addressed and rejected the appellees' arguments that the eluding-lawful-arrest exclusion violated public policy because it negated the statute's provisions regarding minimum coverage:

> Appellees, however, misconstrue the meaning of section 27-22-101(a) and this court's precedent regarding its construction. While the compulsory insurance law requires an automobile liability insurance policy to include certain minimum amounts of coverage, it does not require the policy to insure against all kinds of risk. *See Jordan v. Atl. Cas. Ins. Co.*, 344 Ark. 81, 83, 40 S.W.3d 254, 255 (2001) (named-driver exclusions included in insurance policies in order that "coverage may be maintained on the vehicle to be driven by operators with an acceptable level of risk"). Stated differently, a policy cannot cover certain types of automobile accidents but provide less coverage than the minimum required by statute. Nevertheless, section 27-22-104 does not require that every liability insurance policy cover every type of automobile accident. Indeed, section 27-22-101(a) expressly states that any exclusions, exceptions, or limitations are permitted.
>
> *Appellees place great emphasis on the importance of protecting innocent third parties who are injured in automobile accidents. While this may be a laudable goal, it cannot contradict the stated intent of the legislature.* In addition, while an important policy behind the compulsory insurance law is to decrease the financial catastrophe to others involved in accidents with motorists lacking adequate insurance coverage, it is not the only policy consideration implicated in the instant case. There is a countervailing public policy against compulsory liability insurance for the acts of an intentional wrongdoer. 16 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d* § 116.3 (2000).
>
> As a final point, appellees direct this court to various cases from other jurisdictions holding that exclusionary insurance provisions like the one in the instant case are invalid as against public policy. This court, however, correctly addressed this point in *Smith v. Shelter Mutual Insurance Company*:

> *Because our legislature has specifically provided that the compulsory insurance law was not intended to affect the validity of any policy exclusions, it is unnecessary for us to address cases from other jurisdictions that rely on their own states' statutes.* We feel certain that, if the legislature wishes to provide that the compulsory insurance law is to affect the validity of any policy exclusions, it will change or amend § 27-22-101(a). [3]

327 Ark. 208, 212, 937 S.W.2d 180, 183 (1997).

374 Ark. at 245, 287 S.W.3d at 541–42 (emphasis added).

Ultimately, this case requires us to consider the interplay between our statute requiring omnibus clauses in insurance policies––section 27-19-713––and our statutes requiring compulsory insurance––sections 27-22-101 et seq. (Repl. 2022 & Supp. 2025). Omnibus clauses function as policy-specific contractual provisions that determine which individuals qualify as insureds under a particular policy and extend policy coverage to permissive users. The compulsory insurance statutes, on the other hand, establish mandatory minimum coverage requirements applicable to all motor vehicle operators[4] while acknowledging the validity of exclusions in motor-vehicle insurance policies.

Our case law recognizes that omnibus clauses serve the public policy goal of ensuring compensation for accident victims by extending coverage to permissive users. *See Com. Union*

---

[3]The supreme court noted in *Jordan*, *supra*, that the General Assembly has yet to do so. 344 Ark. at 84, 40 S.W.3d at 256.

[4]Section 27-22-104(a) provides that "[i]t is unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by . . . an insurance policy issued by an insurance company authorized or eligible to do business in this state." Subsection (b) establishes minimum coverage amounts.

9

*Ins. Co.*, *supra* (establishing the initial-permission rule). Such clauses nonetheless remain subject to the policy's terms and conditions. In *Rogers v. State Farm Insurance Co.*, 243 Ark. 887, 422 S.W.2d 677 (1968), our supreme court recognized the distinction between the construction to be placed on an omnibus clause extending the coverage of an insurance policy and an exclusionary clause limiting or excluding coverage under a policy. The court further noted "the modern trend to broaden coverage under omnibus clauses of insurance contracts" but cautioned that "*liberal construction should not extend coverage under an omnibus clause, or restrict it under an exclusionary clause, beyond the plain words and obvious intent and meaning of the words used in the contract.*" 243 Ark. at 891, 422 S.W.2d at 679.

As noted above, unless the legislature has specifically prohibited exclusions, courts will not find the restrictions void as against public policy. *Harasyn*, *supra*. Reading section 27-19-713 in conjunction with section 27-22-101, we can find nothing in our statutes that expressly prohibits exclusions such as the unlicensed-driver clause at issue here. We therefore affirm the circuit court's ruling that the unlicensed-driver exclusion in Trexis's policy does not violate Arkansas's public policy.

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Ken Swindle*, for appellant.

*WDTC Law, P.A.*, by: *David M. Donovan*, for appellee.